TIMOTHY M. BURGESS
United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ELISHA SHEPHERD,<br><br>            Plaintiff,<br><br>vs.<br><br>MILTON J. JAKEWAY and the<br>UNITED STATES OF AMERICA,<br><br>            Defendants. | Case No. 3:01-cv-333-JKS<br><br>**DEFENDANTS' TRIAL BRIEF** |

Defendant, United States of America, through counsel, presents its trial brief on the contested issues in this case.

### I.     Parties and Proceedings

The Plaintiff, Elisha Shepherd, has sued both former US Army CID Special Agent Milton Jakeway under <u>Bivens</u>[1], alleging that he violated her Fourth Amendment rights, as well as the United States under the Federal Tort Claims Act (28 U.S.C. § 2671 et. seq.)("FTCA") for the torts of negligent infliction of emotional distress, intentional infliction of emotional distress and invasion of privacy. All causes of action stem from Shepherd's claim that Jakeway caused her emotional harm when she learned that he viewed a videotape of her and her husband without

---

[1] <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388, 91 S. Ct. 1999 (1971).

acquiring a search warrant.

Shepherd filed her complaint against Jakeway on November 7, 2001. The United States was substituted for the three common law torts and those were dismissed for failure to exhaust administrative remedies. Once the six months expired, Shepherd amended her complaint to add the United States and the three FTCA claims.

After initial discovery, each party moved for summary judgment. Shepherd's motion was denied because "whether Jakeway was objectively reasonable when he viewed the videotape is a question for the trier of fact."[2] The United States' motion was granted as to the claims for negligent infliction of emotional distress and invasion of privacy but denied as to the claim for intentional infliction of emotional distress (IIED). Jakeway's motion for qualified immunity was also denied.

## II. Legal Theory and Defenses

Ms. Shepherd's claim of a constitutional violation will be tried to a jury, while the claim for intentional infliction of emotion distress will be tried to the Court.

### A.  Bivens claim

The primary legal defense will be whether Mr. Jakeway is entitled to qualified immunity. This has been previously briefed. The primary factual question, as this Court phrased it, is "whether Jakeway was objectively reasonable when he viewed the videotape is a question for the trier of fact."

Defendant will argue that Mr. Jakeway's actions were reasonable under the circumstances in that he asked for and received permission from his supervisor, Agent Birt, to view the videotape. Agent Jakeway picked the tape up and showed it to Agent Birt, saying that it seemed out of place. She agreed. They both felt the tape to be out of place because it was unmarked and behind the gun cabinet. Both he and Agent Birt thought that it might have been a recorded suicide note. Agent Birt told Agent Jakeway to check the tape out.[3] It was reasonable

---

[2] Docket No. 39 at 18.

[3] Agent Birt will testify that she worked on two cases at Fort Stewart, Georgia, in which video suicide notes were left. Agent Jakeway had never seized evidence of that sort for a

for Agent Jakeway to view the tape after obtaining the permission of his supervisor.

Agent Jakeway went into the children's room across the hallway from the master bedroom because he could see a television and VCR in that room. Investigator Wisel followed him into the room because it was technically his investigation at that time. Agent Jakeway put the tape in the VCR and pressed play. He and Investigator Wisel saw two white individuals having sex. They did not recognize either individual, but assumed that it was Mr. and Mrs. Shepherd. Agent Jakeway fast forwarded the tape for a few seconds to find out if there was anything else on the tape. Investigator Wisel turned around when Agent Jakeway began to fast forward the tape and began heading for the door. Investigator Wisel only saw a couple of seconds of the tape, and heard it being ejected from the VCR before he made it to the door of the room. After ejecting the tape, Agent Jakeway took it back to the bedroom.

After locating all the weapons in the house and completing evidence vouchers, Agent Birt and Agent Jakeway left the scene. Investigator Wisel went back to the MP station and, with Investigator Barker, took statements from the witnesses, including the Plaintiff.

The Shepherds first learned that Jakeway had viewed the tape when, about a month later, Charlie received a copy of the MP report of the incident.

A second area of contention is whether the emotional distress that Mrs. Shepherd claims is attributable to learning about the videotape being viewed. Dr. David Sperbeck will testify as to his findings from his Rule 36 psychological exam of Mrs. Shepherd, which attributed Mrs. Shepherd's psychological condition to the fact that her husband had attempted to commit suicide, and that at one point she thought that he had succeeded, as well as other factors such as her unsupportive marriage.

      B.  <u>Punitive damages claim</u>

In only certain circumstances, a plaintiff in a *Bivens* case may recover an award of punitive damages in addition to compensatory or nominal damages. Punitive damages serve "to

---

suicide attempt, but had heard of it happening. He has had numerous cases involving video evidence, however, and understood the need to screen tapes to check for any evidentiary value.

Defendants' Trial Brief
SHEPHERD v. JAKEWAY, et al.
Case No. 3:01-cv-333-JKS      3

punish the defendant for his willful or malicious conduct and to deter others from similar behavior," and they "are available only on a showing of the requisite intent." In *Smith v. Wade*, 461 U.S. 30 (1983), the Supreme Court set the standards by which punitive damages may be awarded in actions under *Bivens* and 42 U.S.C. § 1983. The Court ruled that a jury may award punitive damages in such actions "when the defendant's conduct is shown to be motivated by evil motive or intent, *or* when it involves reckless or callous indifference to the federally protected rights of others." Thus, an award of punitive damages in a *Bivens* suit does not require a showing of actual malicious intent on the defendant's part.[4] Punitive damages may be assessed on a lesser standard – *i.e.*, "reckless or callous indifference" – and that is so "even when the underlying standard of liability for compensatory damages" is also "one of recklessness."

In light of *Smith v. Wade*, it is clear that the threshold for punitive damages need not be "higher in every case than the underlying standard for liability in the first instance." In cases where the underlying standard of compensatory liability is "recklessness" or "deliberate indifference," the evidence that establishes compensatory liability may also, without more, establish liability for punitive damages under *Smith*'s "reckless or callous indifference" standard. In many constitutional-tort cases, however, courts have found the evidence sufficient to support an award of compensatory damages but *insufficient* to support an award of punitive damages.[5]

---

[4] *Smith*, 461 U.S. at 45.

[5] *See Kyle v. Patterson*, 196 F.3d 695, 698 (7th Cir. 1999) (affirming summary judgment awarding plaintiff nominal damages and no punitive damages where evidence showed, at most, "mere negligence" on the defendants' part and there was "absolutely nothing about the circumstances" of the case that "comes close to showing evil motive or the level of deliberate indifference necessary to support an award of punitive damages"); *Iacobucci v. Boutler*, 193 F.3d 14, 26-27 (1st Cir. 1999) (holding that plaintiff was not entitled to punitive damages on Fourth Amendment "false arrest" claim, even though arrest was objectively unreasonable, because "no evidence" suggested the defendant "harbored any malice or acted with reckless indifference to [plaintiff's] constitutional rights" or that defendant "acted with an evil motive or a conscious awareness that the arrest might violate [plaintiff's] civil rights," and stating, "Where, as here, the evidence shows no more than that an exasperated police officer, acting in the heat of the moment, made an objectively unreasonable mistake, punitive damages will not lie."); *Kim v. Hurston*, 182 F.3d 113, 121 (2d Cir. 1999) (reversing punitive-damages award where "[t]here was no evidence of the sort of egregious behavior that would warrant such damages); *Wulf v.*

In any event, even if the threshold for liability for compensatory and punitive damages is the same in a particular case, punitive damages are *not automatically* available in every *Bivens* case where a constitutional violation is established.  As the Supreme Court observed in *Smith*, punitive damages "are *never* awarded as of right, no matter how egregious the defendant's conduct. "If the plaintiff proves sufficiently serious misconduct on the defendant's part, the question whether to award punitive damages is left to the jury, which may or may not make such an award."[6]  Thus, in order to award punitive damages, the jury must find that the defendant's conduct meets the appropriate standard (*i.e.*, "evil motive or intent" or "reckless or callous indifference"), but it must *also* make the "discretionary moral judgment"[7] that the defendant's conduct "is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards"[8] and "merit[s] a punitive award . . . in addition to the compensatory award."[9]

In the present case, potential exposure for punitive damages depends on the determination of whether the videotape was or was not marked.  If the jury concludes that the tape was not marked, no basis for punitive damages exists.  If the jury concludes that the tape was marked, Defendant will argue that there is no evidence of any evil motive or intent, nor reckless or callous indifference.

---

*City of Wichita*, 883 F.2d 842, 867 (10th Cir. 1989); *Hernandez-Tirado v. Artau*, 874 F.2d 866, 868 (1st Cir. 1989); *Ivey v. Wilson*, 832 F.2d 950, 958 (6th Cir. 1987); *Walters v. City of Atlanta*, 803 F.2d 1135 (11th Cir. 1986); *Lavicky v. Burnett*, 758 F.2d 468, 477 (10th Cir. 1985); *Soderbeck v. Burnett County*, 752 F.2d 285 (7th Cir. 1985).

[6] *Smith v. Wade*, 461 U.S. at 52 (citation and footnote omitted; emphasis added).

[7] *Id.*

[8] *Id.* at 54.

[9] *Id.* at 52. *Accord Kyle v. Patterson*, 196 F.3d 695, 697-98 (7th Cir. 1999); *Merriweather v. Family Dollar Stores*, 103 F.3d 576, 582 (7th Cir. 1996); *Larez v. City of Los Angeles*, 946 F.2d 630, 649 (9th Cir. 1991) (noting that District Court "properly distinguished between the mandatory imposition of compensatory damages once a violation is found, and the discretionary imposition of punitive damages").

      C.   Intentional Infliction of Emotional Distress

The Court, under the FTCA, is the finder of fact for claims against the United States. Ms. Shepherd has brought a claim of intentional infliction of emotion distress stemming from the fact that Mr. Jakeway included in his police report that he viewed the videotape. To prove a claim for intentional infliction of emotional distress under Alaska law, a plaintiff must prove: (1) the conduct is extreme and outrageous, (2) the conduct is intentional or reckless, (3) the conduct causes emotional distress, and (4) the distress is severe. See, <u>McGrew v. State, Dept. of Health and Social Services, Div. of Family and Youth Services</u>, 106 P.3d 319 (Alaska 2005). Intentional infliction of emotional distress claims require the trial court to make a threshold determination whether the severity of the emotional distress and the conduct of the offending party warrant a claim. In this case, the Court has indicated that a claim may exist if the videotape was marked. Docket No. 39. Nevertheless, even if the court ultimately determines that the tape was marked, the plaintiff will still have to prove that the conduct was extreme, outrageous, intentional or reckless, and that Mr. Jakeway's conduct caused her emotional distress and that the distress is severe. Defendant will argue that Mr. Jakeway's actions do not meet this criteria and that her claim against the United States should be dismissed.

### III.    Evidentiary Issues

There may be evidentiary issues that will require attention prior to trial. These are listed below.

Plaintiff may make reference to unassociated police misconduct events in past years in argument. Plaintiff may attempt to make comparison to this case and various cases that have been reported in the press of charges of sexual improprieties brought against Anchorage Police Officers or Alaska State Troopers. Such comparison in argument is inappropriate because there is no relationship between this case and any other police misconduct matter.

Reference to Mr. Jakeway's deposition testimony that he has, in his personal life, purchased various adult-oriented materials. Such private activity is protected and there is no showing of a link between private viewing of adult materials and Mr. Jakeway's momentary viewing of the videotape to determine its evidentiary value. Such reference at trial would be

Defendants' Trial Brief
SHEPHERD v. JAKEWAY, et al.
Case No. 3:01-cv-333-JKS      6

unduly prejudicial.

Plaintiff may also raise at trial a spoilation of evidence claim stemming from only 17 photographs being taken by MP Investigator Wiesel, leaving undeveloped negatives. Plaintiff has not plead this cause of action nor argued it in motion practice. Plaintiff has waived the opportunity to raise such a claim at this point.

Plaintiff may invoke spousal privilege concerning her conversations with her husband. Plaintiff has waived such claims by bringing this action.

Plaintiff may object to the admission of the videotape into evidence. Defendant has a copy of the video. The original was apparently destroyed. Defendant does not intend to ask to show the videotape at trial, but wishes the reserve the right to do so if it is necessary to impeach the plaintiff.

Respectfully requested this 10th day of January, 2006, in Anchorage, Alaska.

TIMOTHY M. BURGESS
United States Attorney

s/Richard L. Pomeroy
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov
AK #8906031

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2006,
a copy of the foregoing Defendants'
Trial Brief was served electronically on
Yale H. Metzger.

via US mail on

LeRoy E. DeVeaux
DeVeaux & Associates
701 W. 41st Avenue, Suite 201
Anchorage, AK 99503-6604


s/ Richard L. Pomeroy