Yale H. Metzger
Alaska Bar No. 9512082
Law Offices of Yale H. Metzger
101 East 9th Avenue, Suite 7A
Anchorage, Alaska 99501
Telephone (907) 258-4110

LeRoy E. DeVeaux
DeVeaux & Associates, A.P.C.
Alaska Bar No. 7310040
701 West 41st Avenue, Suite 201
Anchorage, Alaska 99503
Telephone (907) 565-2906

RECEIVED

JAN 1 0 2006

CLERK U.S. DISTRICT COURT
ANCHORAGE ALASKA

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **ELISHA SHEPHERD,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **MILTON J. JAKEWAY, and** ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | Case No.A01-333 Civil (JKS) |
| Defendants. ) | |
| ) | |

### PLAINTIFF'S TRIAL BRIEF

Elisha Shepherd, through her attorneys, submits the following as her trial brief:

### Introduction

This case involves the illegal viewing of the contents of a video tape by the Defendant during a police search of the Plaintiff's residence at Fort Richardson, Alaska. The video tape contains images of the Plaintiff engaged in sexual relations with her husband. The Plaintiff has two claims against the Defendants. The first claim was brought against Milton Jakeway pursuant to the authority in <u>Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999 (1971). The plaintiff has a second claim against the

1

United States under the Federal Tort Claims Act for intentional infliction of emotional distress.

## Facts

1. The Defendants conducted a search of the Plaintiff's residence on Fort Richardson, Alaska, on November 18, 2000, as part of their investigation of a report of her husband's alleged attempted suicide.

2. Mrs. Shepherd consented to a search of her residence by the Defendants only for the purpose of seizing firearms.

3. During their consensual search limited to firearms, Agent Jakeway (who collects, rents and watches adult video tapes) and Investigator Wisel found and viewed a VHS video tape on the floor of Mrs. Shepherd's bedroom between a gun cabinet and the wall.

4. The video tape depicted Mrs. Shepherd engaged in sexual relations with her husband.

5. The testimony of Agent Jakeway and Investigator Wisel is that there were no exigent circumstances which required the viewing of the subject video tape without first obtaining authorization to view the contents of the tape.

6. The U.S. Army had adequate resources available on the evening of November 18, 2000, to secure the Shepherd residence and/or video tape while it sought authorization to view the contents of the subject video tape.

7. Mrs. Shepherd learned that Agent Jakeway viewed the contents of the video tape depicting her engaged in sexual relations with her husband when she read Agent Jakeway's report of the incident involving her husband.

2

8.   Mrs. Shepherd suffered severe emotional distress when she learned that the Defendant viewed the video tape.

There is no dispute whatsoever concerning the eight material facts set forth above.   There exists a dispute between the Plaintiff and the Defendants regarding whether or not the video tape was labeled.   The Plaintiff has testified that the video tape was clearly labeled as described in her complaint and identified it as depicting "Charlie and Elisha making love."   The Defendant fails to explain how he determined that the video tape was unlabeled when it was on the floor behind a gun cabinet.   However, notwithstanding the complete lack of credibility of Agent Jakeway from his various accounts of why he watched the subject video tape, this dispute is not material because the Court has already ruled that the Defendant should never have viewed the video tape, regardless of whether or not it was labeled.   (Docket No. 39, p.p. 12-13.)

Then, Jakeway claims that he only viewed a few seconds of the video tape.   The subject VHS cassette contains several hours of tape.   If Agent Jakeway were actually searching for a video taped suicide note, he would have been required to watch the entire tape.   Again, he testified that he only watched a short segment of the tape.   Thus, his own testimony concerning how long he watched the tape contradicts his reported reason for viewing the contents of the tape.   In other words, he claims to have determined that the several hours of video tape did not contain a suicide note by viewing only a short segment of the tape.   The reason that his story makes no sense is that it is not true.   All reasonable inferences are that Agent Jakeway knew

3

exactly what was on the video tape when he viewed it contents. He learned of its contents from its label. He viewed the contents of the tape for the same reasons he views other adult video tapes he rents and collects.

Agent Jakeway claimed that he viewed the video tape because (1) of its unusual location, and (2) in order to determine whether it contained a recorded suicide note. The Court rejected this excuse when it stated, "[n]either of these factors could lead a reasonable officer to believe, to the certainty required by law, that the contents of the tape were a foregone conclusion so that a warrant was not necessary before viewing." (Docket No. 39, p. 10.)

While Jakeway's various accounts and explanations of the circumstances surrounding his examination of the contents of the subject video tape will in all likelihood never make sense, it remains undisputed that without a warrant or the consent of any person authorized to provide it, Agent Jakeway and others examined the contents of the most deeply personal and private property of Mrs. Shepherd while he was in her home and when no exigent circumstances justified such a search, thereby causing her to suffer severe emotional distress.

### Proceedings

The Court has ruled that as a matter of law that Milton Jakeway is not entitled to qualified immunity (Docket No. 39, p. 14), and that the search he conducted when he viewed the contents of the subject video tape was unlawful (Docket No. 39, p. 12-13).

4

As the case is presently structured, the Court will try the claim for intentional infliction of emotions distress under the Federal Tort Claims Act, and a jury will try the <u>Bivens</u> claim for violation of Ms. Shepherd's constitutional right to be free from unreasonable search and seizure. Ms. Shepherd is entitled to punitive damages in the <u>Bivens</u> claim.

The legal standard for the tort of intentional infliction of emotional distress in Alaska was recognized in <u>Tommy's Elbow Room v. Kavorkian</u>, 727 P.2d 1038 (Alaska 1986) (intentional infliction of emotional distress claim requires that the defendant acted in deliberate disregard of a high degree of probability that the emotional distress will follow).In <u>Lybrand v. Trask</u>, 31 P.3d 801 (Alaska 2001), the Alaska Supreme Court stated that a prima facie case of IIED requires extreme or outrageous conduct which intentionally or recklessly causes severe emotional distress or bodily harm to another.

**Authorities Relied Upon by the Plaintiff**

<u>Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999 (1971).

<u>Flores v. Pierce</u>, 617 F.2d 1386 (9th Cir. 1980) (emotional distress damages).

<u>Lybrand v. Trask</u>, 31 P.3d 801 (Alaska 2001) (prima facie case of IIED requires extreme or outrageous conduct intentionally or recklessly caused severe emotional distress or bodily harm to another).

<u>Odato v. Vargo</u>, 677 F.Supp. 384 (W.D. Pa. 1988) (punitive damages award should be predicated on evidence of officer's predisposition to particular type of behavior, or that punitive

5

damages are necessary to protect fundamental constitutional rights).

Tommy's Elbow Room v. Kavorkian, 727 P.2d 1038 (Alaska 1986)(intentional infliction of emotional distress).

Vosberg v. Putney, 50 N.W. 403 (Wis. 1891)(eggshell skull doctrine).

White v. Washington Pub. Power Supply Sys., 692 F.2d 1286 (9th Cir. 1987) (punitive damages).

### Expected Defenses

The Plaintiff expects the Defendants to argue that Ms. Shepherd was already emotionally fragile when the subject search was conducted by the Defendants, and therefore, they are not liable for her damages. The Plaintiff asserts that Ms. Shepherd is the classic eggshell skull plaintiff under the doctrine first discussed in Vosberg v. Putney, 50 N.W. 403 (Wis. 1891), and adopted by Alaska in Alaska Civil Pattern Jury Instruction 20.11 regarding the "Aggravation of Pre-Existing Condition or Disability."

### Objections to Exhibits

As exhibits have not been exchanged, the Plaintiff will assert any objections to the Defendants' exhibits in her amended trial brief.

**DATED** this _10TH_ day of January 2006 at Anchorage, Alaska.

The Law Offices of Yale H. Metzger
Attorney for the Plaintiff

Yale H. Metzger
Alaska Bar No. 9512082

DeVeaux & Associates
Attorney for the Plaintiff

LeRoy E. (Gene) DeVeaux
Alaska Bar No. 7310040

A true and correct copy of the
foregoing was hand delivered/
mailed to the following this
_10th_ day of January 2006:

Richard L. Pomeroy, Esq.
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 Wet 7th Avenue, No. 9, Room 253
Anchorage, Alaska 99513-7567

Yale H. Metzger

7