RECEIVED

JAN 1 7 2006

CLERK U.S. DISTRICT COURT
ANCHORAGE ALASKA

Yale H. Metzger
Alaska Bar No. 9512082
Law Offices of Yale H. Metzger
101 East 9th Avenue, Suite 7A
Anchorage, Alaska 99501
Telephone (907) 258-4110

LeRoy E. DeVeaux
DeVeaux & Associates, A.P.C.
Alaska Bar No. 7310040
701 West 41st Avenue, Suite 201
Anchorage, Alaska 99503
Telephone (907) 565-2906

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| **ELISHA SHEPHERD,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| **MILTON J. JAKEWAY, and** **UNITED STATES OF AMERICA,** | ) ) ) | |
| Defendants. | ) ) ) | Case No.A01-333 Civil (JKS) |

### PLAINTIFF'S FIRST AMENDED TRIAL BRIEF

Elisha Shepherd, through her attorneys, submits the following as her trial brief:

### Introduction

This case involves the illegal viewing of the contents of a video tape by the Defendant during a police search of the Plaintiff's residence at Fort Richardson, Alaska. The video tape contains images of the Plaintiff engaged in sexual relations with her husband. The Plaintiff has two claims against the Defendants. The first claim was brought against Milton Jakeway pursuant to the authority in <u>Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999 (1971). The plaintiff has a second claim against the

1

United States under the Federal Tort Claims Act for intentional infliction of emotional distress.

### Facts

1.  The Defendants conducted a search of the Plaintiff's residence on Fort Richardson, Alaska, on November 18, 2000, as part of their investigation of a report of her husband's alleged attempted suicide.

2.  Mrs. Shepherd consented to a search of her residence by the Defendants only for the purpose of seizing firearms.

3.  During their consensual search limited to firearms, Agent Jakeway (who collects, rents and watches adult video tapes) and Investigator Wisel found and viewed a VHS video tape on the floor of Mrs. Shepherd's bedroom between a gun cabinet and the wall.

4.  The video tape depicted Mrs. Shepherd engaged in sexual relations with her husband.

5.  The testimony of Agent Jakeway and Investigator Wisel is that there were no exigent circumstances which required the viewing of the subject video tape without first obtaining authorization to view the contents of the tape.

6.  The U.S. Army had adequate resources available on the evening of November 18, 2000, to secure the Shepherd residence and/or video tape while it sought authorization to view the contents of the subject video tape.

7.  Mrs. Shepherd learned that Agent Jakeway viewed the contents of the video tape depicting her engaged in sexual relations with her husband when she read Agent Jakeway's report of the incident involving her husband.

8.  Mrs. Shepherd suffered severe emotional distress when she learned that the Defendant viewed the video tape.

There is no dispute whatsoever concerning the eight material facts set forth above.  There exists a dispute between the Plaintiff and the Defendants regarding whether or not the video tape was labeled.  The Plaintiff has testified that the video tape was clearly labeled as described in her complaint and identified it as depicting "Charlie and Elisha making love."  The Defendant fails to explain how he determined that the video tape was unlabeled when it was on the floor behind a gun cabinet.  However, notwithstanding the complete lack of credibility of Agent Jakeway from his various accounts of why he watched the subject video tape, this dispute is not material because the Court has already ruled that the Defendant should never have viewed the video tape, regardless of whether or not it was labeled.  (Docket No. 39, p.p. 12-13.)

Then, Jakeway claims that he only viewed a few seconds of the video tape.  The subject VHS cassette contains several hours of tape.  If Agent Jakeway were actually searching for a video taped suicide note, he would have been required to watch the entire tape.  Again, he testified that he only watched a short segment of the tape.  Thus, his own testimony concerning how long he watched the tape contradicts his reported reason for viewing the contents of the tape.  In other words, he claims to have determined that the several hours of video tape did not contain a suicide note by viewing only a short segment of the tape.  The reason that his story makes no sense is that it is not true.  All reasonable inferences are that Agent Jakeway knew

3

exactly what was on the video tape when he viewed it contents. He learned of its contents from its label.  He viewed the contents of the tape for the same reasons he views other adult video tapes he rents and collects.

Agent Jakeway claimed that he viewed the video tape because (1) of its unusual location, and (2) in order to determine whether it contained a recorded suicide note.  The Court rejected this excuse when it stated, "[n]either of these factors could lead a reasonable officer to believe, to the certainty required by law, that the contents of the tape were a foregone conclusion so that a warrant was not necessary before viewing." (Docket No. 39, p. 10.)

While Jakeway's various accounts and explanations of the circumstances surrounding his examination of the contents of the subject video tape will in all likelihood never make sense, it remains undisputed that without a warrant or the consent of any person authorized to provide it, Agent Jakeway and others examined the contents of the most deeply personal and private property of Mrs. Shepherd while he was in her home and when no exigent circumstances justified such a search, thereby causing her to suffer severe emotional distress.

## Proceedings

The Court has ruled that as a matter of law that Milton Jakeway is not entitled to qualified immunity (Docket No. 39, p. 14), and that the search he conducted when he viewed the contents of the subject video tape was unlawful (Docket No. 39, p.p. 12-13).

4

As the case is presently structured, the Court will try the claim for intentional infliction of emotions distress under the Federal Tort Claims Act, and a jury will try the <u>Bivens</u> claim for violation of Ms. Shepherd's constitutional right to be free from unreasonable search and seizure.  Ms. Shepherd is entitled to punitive damages in the <u>Bivens</u> claim.

The legal standard for the tort of intentional infliction of emotional distress in Alaska was recognized in <u>Tommy's Elbow Room v. Kavorkian</u>, 727 P.2d 1038 (Alaska 1986) (intentional infliction of emotional distress claim requires that the defendant acted in deliberate disregard of a high degree of probability that the emotional distress will follow).In <u>Lybrand v. Trask</u>, 31 P.3d 801 (Alaska 2001), the Alaska Supreme Court stated that a prima facie case of IIED requires extreme or outrageous conduct which intentionally or recklessly causes severe emotional distress or bodily harm to another.

## Authorities Relied Upon by the Plaintiff

<u>Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999 (1971).

<u>Flores v. Pierce</u>, 617 F.2d 1386 (9th Cir. 1980) (emotional distress damages).

<u>Lybrand v. Trask</u>, 31 P.3d 801 (Alaska 2001) (prima facie case of IIED requires extreme or  outrageous conduct intentionally or recklessly caused severe emotional distress or bodily harm to another).

<u>Odato v. Vargo</u>, 677 F.Supp. 384 (W.D. Pa. 1988) (punitive damages award should be predicated on evidence of officer's predisposition to particular type of behavior, or that punitive

damages are necessary to protect fundamental constitutional
rights).

Tommy's Elbow Room v. Kavorkian, 727 P.2d 1038 (Alaska
1986)(intentional infliction of emotional distress).

Vosberg v. Putney, 50 N.W. 403 (Wis. 1891)(eggshell skull
doctrine).

White v. Washington Pub. Power Supply Sys., 692 F.2d 1286
(9th Cir. 1987) (punitive damages).


### Expected Defenses and Evidentiary Issues

The Defendant stated in its trial brief, "[t]he primary
legal defense [to the Plaintiff's Bivens claim] is whether Mr.
Jakeway is entitled to qualified immunity."  (Defendant's Trial
Brief, p. 2.)  This defense fails for two reasons.

First, the basis for the above defense in the Defendant's
brief (p. 2, fn 2) is the Court's statement at Docket No. 39, p.
18:

> whether Jakeway was objectively reasonable when he viewed
> the videotape is a question for the trier of fact.

The foregoing finding by the Court was with respect to Ms.
Shepherd's state law tort claim for intentional infliction of
emotional distress - not the Plaintiff's Bivens claim.

Second, with respect to the Plaintiff's Bivens claim, the
Court found:

> The Court finds that, as the previous discussion
> illustrates, the law is clearly established regarding
> warrantless viewing of a videotape so that a
> reasonable officer would not believe that viewing the
> videotape was lawful.  As a result Jakeway will not
> receive qualified immunity and Jakeway's motion for
> summary judgment will be denied.

6

(Docket No. 39, p. 14.)

Since the foregoing is the only defense offered by the Defendant to the Plaintiff's <u>Bivens</u> claim, the Plaintiff expects to seek a directed verdict on this claim.

The Defendants to argue that Ms. Shepherd was already emotionally fragile when the subject search was conducted by the Defendants, and therefore, they are not liable for her damages. The Plaintiff asserts that Ms. Shepherd is the classic eggshell skull plaintiff under the doctrine first discussed in <u>Vosberg v. Putney</u>, 50 N.W. 403 (Wis. 1891), and adopted by Alaska in Alaska Civil Pattern Jury Instruction 20.11 regarding the "Aggravation of Pre-Existing Condition or Disability."

The Defendants argue that the determination of whether or not the videotape was marked is relevant to the Defendant Jakeway's "evil motive or intent." (Defendants' brief, p. 5.) This is precisely why evidence of Mr. Jakeway's habit of renting and purchasing adult videotapes is material and relevant.  In determining what, if any, punitive damages to award, the jury will need to consider whether Mr. Jakeway was motivated to view the videotape by his curiosity or if he watched it to satisfy his established lascivious motives.  (See Docket No. 39, p. 13.)

The Defendants object to expected references by Plaintiff's counsel, during argument, to other police misconduct cases involving sexual misconduct.  The Plaintiff expects to make arguments about both (1) the U.S. Army and its tolerance of such conduct as exists in the present case - such atmosphere of tolerance leading to improper conduct by Military Police involving sexual exploitation of others such as prisoners in

7

Iraq; and (2) misconduct in the Anchorage Police Department where the Defendant Jakeway and witness Michael Wisel are currently employed. This argument is relevant to the Plaintiff's claim for punitive damages and the benefit of the deterrent effect of punitive damages.

The Defendants state that they expect the Plaintiff will raise an issue with respect to the apparent destruction of several negatives from the roll of film taken at the Shepherd residence. This issue does not concern "undeveloped negatives" as referenced by the Defendants in their trial brief. The negatives were obviously developed before they were destroyed. Ms. Shepherd is not making a claim for spoliation. She will argue that it is possible to infer, and is indeed likely, that the negatives that were destroyed contained photographs of the subject videotape - with its label.

The original of the Shepherd videotape is currently in the possession of the Anchorage Police Department evidence custodian. The tape was in a safe in the Plaintiff's counsel's office that was stolen during a burglary of the office in early 2005. The safe and its contents were recovered by the Anchorage Police Department on the side of an exit of the Glenn Highway. The video cassette was apparently smashed when some type of heavy equipment was used to break into the safe. As such, the Plaintiff expects to use pre-theft photographs of the video cassette instead of having the actual cassette present in the courtroom.

Finally, the Plaintiff will seek an order requiring that no actual video cassette, including the copy provided to the

Defendants pursuant to a protective order, be within view of the jury.

### Objections to Exhibits

The Plaintiff objects to the following Defense exhibits:

D-3 Elisha Shepherd Deposition - Only object to the extent the deposition is offered for other than to impeachment the witness, to refresh the witnesses memory or rehabilitate the witnesses testimony.

D-4 Charles Shepherd Deposition - Only object to the extent the deposition is offered for other than to impeachment the witness, to refresh the witnesses memory or rehabilitate the witnesses testimony.

D-5  MP Report of Investigation - Objection, hearsay.

D-6  Agent Investigative Report (Jakeway) - Objection, hearsay.

D-7  Agent Investigative Report (Birt) - Objection, hearsay.

D-8 Sworn Statement - David Kuhns - Objection, hearsay.

D-9 Sworn Statement - Melissa Kuhns - Objection, hearsay.

D-11 David Sperbeck Report - Objection, hearsay.

D-13 Videotape - Objection, Evidence Rules 403, 404.

### Objections to Defendant's Proposed Voir Dire Questions

The Plaintiff objects to the Defendant's proposed additional voir dire question number 6 in which he requests that the Court ask prospective jurors:

Have you ever made a sexually explicit home video or movie?  Do you have opinions concerning people who have made such movies?

The Plaintiff objects to the first portion of this question

as unnecessarily invading the privacy of the prospective jurors.
If the question is asked, the Plaintiff requests that the
prospective jurors be informed that this is a question being
asked at the request of the Defendant.

### Objection to Defendant's Proposed Jury Instructions and Special Jury Verdict Form

Instructions 11.1, 11.2, 11.5, 11.6 - The Court has already
determined that the search which is the subject of the captioned
case was unlawful; and (Docket No. 39, p.p. 12-13), the
Defendants admitted that Agent Jakeway was acting under the
color of law (Defendant's Certification Dated January 16, 2002,
Docket No. ___ ).

Additional Jury Instructions - The Defendants request the
following instruction:

> There are two defendants in this case, Milton Jakeway and
> the United States of America. Each are being tried
> separately. You, the Jury, are tasked with determining
> whether Mrs. Shepherd is entitled to recover money damages
> from Mr. Jakeway only. I, as the Judge, will determine
> whether Mrs. Shepherd should recover money from the U.S. on
> her claim that the U.S. intentionally inflicted emotional
> distress.

The Plaintiff objects to the foregoing instruction. There
is no reason for the jury to even be informed about the claims
against the United States. Such information and instruction may
prejudice and confuse the jury. Additionally, this statement is
incorrect if, as the Court has held:

> The motion to dismiss Counts 2, 3 and 4 at **Docket No. 7** is
> **GRANTED WITHOUT PREJUDICE** (emphasis in original) to
> refiling if the administrative claims are denied (provided
> the Court will only revisit the issue of vicarious
> liability if the claims are denied on the basis of
> timeliness, and not on the merits barring further action
> against the Government under the Federal Tort Claims Act.)

(Order from Chambers, February 11, 2002, Docket No. 11.)

**Objection to Defendant's Final Witness List**

Pam Scott - Objection, Ms. Scott has never been identified on any witness list prior to the Defendants' Final Witness List, or identified in the Defendants' Civil Rule 26 disclosures or supplements.

**Objection to Defendant's Proposed Special Verdict Form**

First, the reasonableness of the Defendant's conduct is not at issue in light of the law of the case in the Court's findings and conclusions on the parties' cross-motions for summary judgment when the Court found, "[n]either of these factors could lead a reasonable officer to believe, to the certainty required by law, that the contents of the tape were a foregone conclusion so that a warrant was not necessary before viewing." (Docket No. 39, p. 10.)

Second, it was not the Defendant's viewing of the subject video tape that is alleged to have caused injury to the Plaintiff. The Plaintiff's <u>Bivens</u> claim is that her Constitutional protection against unreasonable searches was violated.

Third, it is unnecessary for the jury to make specific findings with respect to whether or not the subject video tape was "marked."

Fourth, the Defendants include several questions concerning negligence, allocation of fault and comparative fault. The jury is not deciding a negligence issue. The issue going to the jury is the Plaintiff's <u>Bivens</u> claim for violating one of her Constitutional rights. As such, the special verdict form should

make no reference to "negligence" by any party.  Additionally, the Plaintiff cannot be comparatively at fault for violating her own Constitutional rights.  Such argument ignores the fundamental principle that the Plaintiff was not acting under the color of law.  Additionally, the argument that the Plaintiff was comparatively at fault for living on a military installation where she should have known the CID investigators had a habit of buying and renting adult pornographic video tapes and would be predisposed to unlawfully view the video tape at issue in the present case, is also legally baseless.

DATED this 17TH day of January 2006 at Anchorage, Alaska.

> The Law Offices of Yale H. Metzger
> Attorney for the Plaintiff
>
> Yale H. Metzger
> Alaska Bar No. 9512082
>
> DeVeaux & Associates
> Attorney for the Plaintiff
>
> LeRoy E. (Gene) DeVeaux
> Alaska Bar No. 7310040

A true and correct copy of the foregoing was hand delivered/ mailed to the following this 17TH day of January 2006:

Richard L. Pomeroy, Esq.
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 Wet 7th Avenue, No. 9, Room 253
Anchorage, Alaska 99513-7567

Yale H. Metzger