DEBORAH M. SMITH
Acting United States Attorney

SUSAN J. LINDQUIST
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: susan.lindquist@usdoj.gov

Attorney for Defendants

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ELISHA SHEPHERD,<br><br>                    Plaintiff,<br><br>      vs.<br><br>MILTON J. JAKEWAY and the<br>UNITED STATES OF AMERICA,<br><br>                    Defendants. | Case No. 3:01-cv-00333-JKS<br><br>**UNITED STATES' MOTION TO ESTABLISH THAT THE VIDEOTAPE WAS LEGALLY SEARCHED** |

The United States and Milton Jakeway ("Mr. Jakeway"), through counsel,

move for a second time for summary judgment on the issue of whether Mr.

Jakeway's search of the Elisha Shepherd's ("Mrs. Shepherd's") videotape was

legal or reasonable. [1] The search was both legal and reasonable under two recognized exceptions to the warrant requirement: search incident to arrest and plain view. Since the Court issued it's Order at Docket 39 in August of 2003, the "incident to arrest" exception to a warrantless search has been broadened in judicial decisions. Under new authority, it is even more apparent that Mr. Jakeway's search was lawful.

**FACTS**

The facts relevant to this issue are in the Court's Order at Docket 39, in the Introduction and the Factual Background. Of special note is the fact that "[t]he viewing [of the videotape] occurred by Agent Milton J. Jakeway who was conducting a search incident to an arrest of Specialist Charles Shepherd."[2] Id. at 1. Prior to the viewing, "Jakeway arrived at the scene after the other officers, entered the Shepherds' home and assisted in apprehending Specialist

---

[1] This motion may exceed the scope of the Court's request for addition briefing at the pre-trial conference. If it does, the government would request leave of Court to file an untimely Second Motion for Summary Judgment.

[2] Although the Court used the word arrest, the military uses the word apprehend. Its Rules of Court Martial (R.C.M.) defines apprehension as "the taking of a person into custody." The discussion states that "Apprehension is the equivalent of 'arrest' in civilian terminology." Ex. A. The government agents consistently state that Mr. Charles Shepherd was apprehended.

Shepherd. Id. at 5. The [o]fficers took Specialist Shepherd into custody . . . ." Id. at 2. Specialist Shepherd tried to commit suicide in the bedroom. Id. at 11. After her husband's arrest, Mrs. Shepherd consented to a search of her home, specifically for weapons. Id. at 2.

Additional facts not specifically recited in the prior Order, but which are relevant to an analysis of a search "incident to arrest," are that after Mr. Shepherd was cuffed and taken into custody, Mr. Jakeway went downstairs and radioed the department and reported the events, but he did not leave the residence. Ex. D at 90. (Plt. Trial Ex. P.2). He then returned to the master bedroom to search for evidence of the crime. He only searched the master bedroom. Ex. D at 60, 90. The gun cabinet and wall, where the videotape was found, were in close proximity to the bed where Mr. Shepard attempted to commit suicide. Docket 39 at 2-3; Ex. E (Def. Trial Ex. D-11 at 1 (photograph)). When Mr. Jakeway was in the master bedroom, Agent Angela Birt ("Ms. Birt") and Agent Michael Wisel ("Mr. Wisel") went outside and spoke with Mrs. Shepherd and got consent to a search of the house for weapons. Mr. Jakeway did not specifically hear about the parameters of the consent until after the search was over. Ex. D. at 62-63, 110-11. Mr. Jakeway,

himself, only searched the bedroom because that is where he found Mr. Shepherd with the weapon.  Ex. D at 111.

When Ms. Birt referred to her own actions she said that after she spoke to Mrs. Shepherd she returned to the residence and "assisted in completing the rest of the search, incident to apprehension."  Ex. B at 26. (Plt's Trial Ex. P1).  She was completing the search for evidence that was started before she had spoken with Mrs. Shepherd.  See Ex. B at 17.

During discovery in this case, Mr. Jakeway was asked to identify the facts which he contends authorized him to conduct a search of the residence, including viewing the videotape.  Ex. C at 4 (Plt's Trial Ex. P-8).  He stated:

> On November 18, 2000, Specialist Charles Shepherd was apprehended for criminal misconduct including assault and attempted suicide.  There was no significant delay between his apprehension and the search of the master bedroom of the Plaintiff's residence where Specialist Shepherd committed these crimes.  It was during this search of the master bedroom for evidence of these crimes that an unlabeled videotape was discovered in plain view, and the videotape was discovered within minutes of the apprehension.  The videotape was located within a few steps of where Specialist Shepherd attempted to commit suicide in front of Agent Angela Birt and Investigator Wisel.  There was nothing in the master bedroom on which to play a videotape, and there were no other videotapes discovered in the master bedroom.  Agent Birt was consulted and agreed that the tape should be screened for any evidentiary value as a possible suicide note.  Prior to the initiation of this search incident to apprehension, Plaintiff Elisha Shepherd consented to the search of her property for weapons.

Shepherd v. Jakeway, et.al.
3:01-cv-00333-JKS                        4

At his deposition, Mr. Jakeway was asked whether he believed that he could search a house or dwelling unit if he apprehended someone in that unit incident to the apprehension. Ex. D at 113. He answered, "Not the entire house. Just where he is at; reach, lunge, or grab". Id. Moments later he added that the search would include weapons and evidence. Id. at 114.

## STANDARD OF REVIEW

The standard of review is set out in the prior Order. Docket 39 at 4.

## ANALYSIS

**I.    A SEARCH MADE "INCIDENT TO ARREST" DOES NOT VIOLATE THE FOURTH AMENDMENT.**

In its Order, the Court acknowledged at two places that Mr. Jakeway searched the Shepherd's residence based on Mrs. Shepherd's consent and incident to arrest. Docket 39 at 1 & 13. Unfortunately the Order never analyzed the parameters of a search "incident to arrest." Instead, the Court addressed the scope of a permissible search under the "exigent circumstances" and "plain view" exceptions to the warrant requirement. Id. at 6. But the exception to the warrant requirement known as "incident to arrest" is an entirely separate exception to the warrant requirement. The confusion may have arisen from the fact that there were actually

Shepherd v. Jakeway, et.al.
3:01-cv-00333-JKS                    5

two proposed bases for the warrantless search which were taking place at the same time.  One was the consent search which the government agrees was limited to weapons.  The other was the search "incident to arrest" which was only taking place in the bedroom.  At the time, Mr. Jakeway was not relying on Mrs. Shepherd's consent because he had no knowledge of the parameters of the consent.

Since the Court's 2003 Order, new judicial decisions have made it amply clear that Mr. Jakeway had the right to view the tape pursuant to the "incident to arrest" exception to the warrant requirement, irregardless of whether Mr. Shepherd was at the scene or whether the evidence related to the crime for which he was arrested.

By way of background, in <u>Chimel v. California</u>, 395 U.S. 752, 753 (1969) the Supreme Court addressed what is "the permissible scope under the Fourth Amendment of a search incident to a lawful arrest."  The officers arrested Mr. Chimel in his home pursuant to an arrest warrant but they did not have a search warrant.  After permission to search was denied, the officers stated that they would conduct a search based on a lawful arrest and they searched the entire home.  <u>Id.</u> In addressing whether the valid arrest justified a search of the entire home, the

Court recited the entire history of the judicial approval of a warrantless search incident to a lawful arrest, which was justified by officer safety and the need to preserve evidence.  Id. at 755-65.  The Court concluded that the search "went far beyond the petitioner's person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him."  Id. at 768.

In Thornton v. U.S., 541 U.S. 615 (2004), the Court considered whether the search incident to arrest could be done by a person other than an arresting officer, after the arrestee is removed from the scene of the crime.  In Thornton, the officer observed erratic driving behavior.  Before he could pull Mr. Thornton over, Mr. Thornton parked and left his vehicle.  Id. at 618.  Outside the vehicle, the officer accosted Mr. Thornton, performed a consent search of the person, discovered drugs, handcuffed him, arrested him, and placed him in the back seat of the patrol car.  Id.  The office then searched the car and found a gun.  Id.  In reviewing whether the warrantless search was proper as "incident to arrest," the Supreme Court discussed the historical justification for this type of search which was limited to the person of the arrestee and the area immediately surrounding him.  Id. at 620.  It stated that "[t]his rule was justified by the need to remove any weapon

Shepherd v. Jakeway, et.al.
3:01-cv-00333-JKS                7

the arrestee might seek to use to resist arrest or to escape, and the need to prevent the concealment or destruction of evidence." Id.  The Court concluded that "[i]n all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle.  An officer may search a suspect's vehicle under Belton only if the suspect is arrested. "[3] Id. at 621.  Although the Court acknowledged that all contraband within the passenger compartment of a car was not "readily accessible," to the arrestee, it nevertheless found that "[o]nce an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment." Id. at 623.  Even though Mr. Thornton had been removed from the immediate scene and no longer presented a risk of grabbing for a weapon or evidence, the search "incident to arrest" was proper.  In Belton, the Court had found that the arrest itself, without more, justifies the search.  It wrote:

> . . . [T]he police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. * * * Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful

---

[3]  New York v. Belton, 453 U.S. 454 (1981).

Shepherd v. Jakeway, et.al.
3:01-cv-00333-JKS                    8

custodial arrest justifies the infringement of any privacy interest the arrestee may have.

453 U.S. at 461.

Even before Thornton, the Ninth Circuit had approved of a search incident to arrest, when it was conducted five minutes after the arrestee had been removed from the room where he had been arrested.  United States v. McLaughlin, 170 F.3d 889, 893 (9th Cir. 1999).  In McLaughlin, the officer pulled over Mr. McLaughlin, learned that there was an outstanding warrant on him, and called for a back-up officer.  After Officer Eckert, the back-up officer arrived, he asked Mr. McLaughlin to exit the car, and arrested him on an outstanding warrant.  He then handcuffed him, patted him down and placed him in the patrol car.  Id. at 890.  A full five minutes after the officer left, transporting Mr. McLaughlin to jail, Officer Eckert searched the car and eleven minutes into the search he found and opened a backpack containing marijuana.  Id. at 890-91.  The Court found that "a police officer may search the passenger compartment of an automobile and its containers as a "contemporaneous incident of [a lawful] arrest."  Id. at 891.  In so finding, the Ninth Circuit wrote:

> Also useful to our determination of whether the initial search of McLaughlin's car was lawful is our holding in United States v. Hudson, 100 F.3d 1409 (9th Cir.1996).  In Hudson, a *non-vehicular* case, officers

found the defendant in his bedroom in his parents' house, "ordered him out of the room, handcuffed him, removed him from the house, and continued their [security] sweep." 100 F.3d at 1413. About three minutes later, one of the officers returned to the bedroom in which the defendant had been found and conducted a search resulting in the discovery of a gun and drug paraphernalia. See id. We affirmed the denial of the defendant's motion to suppress, holding that a warrantless search "may be conducted shortly after the arrestee has been removed from the area" as a contemporaneous incident of an arrest. Id. at 1419.

Although Hudson involved the search of a house, not a car, it is nonetheless instructive. In Hudson, the search without the defendant present was valid because it was conducted as a contemporaneous incident of the defendant's arrest, even though the defendant was not then "at the scene" and capable of grabbing weapons or destroying evidence. In Hudson, the Ninth Circuit summarized prior Ninth Circuit precedent addressing the scope of a search incident to an arrest. It wrote:

> With respect to the physical scope of the search, we have held that a search incident to arrest may "encompass a room from which the arrestee has been removed." Id. at 887-88 (limiting holding to "the narrow facts of a short time span and the arrestee's close proximity"). We have also held that a search incident to arrest may justify the opening of containers found within the physical area covered by the search. Andersson, 813 F.2d at 1455 (citing United States v. Burnette, 698 F.2d 1038, 1049 (9th Cir.) (citations omitted), cert. denied, 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983)).[FN2] The rationale for searches of open or closed containers is "not that the arrestee has no privacy interest in the container, but *1420 that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have." New York

Shepherd v. Jakeway, et.al.
3:01-cv-00333-JKS                    10

v. Belton, 453 U.S. 454, 460-61, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768
(1981) (upholding search incident to arrest where officer searches jacket
of one of suspects arrested during traffic stop).

100 F.3d at 1419.

More germain to the search in question, was the search in United States v.
Tank, 200 F.3d 627 (9th Cir. 2000), where the officers executed an arrest warrant
for Mr. Tank and a search warrant for his home.  Tank's automobile was not
included in the warrant.  Id. at 629.  But, "Tank was apprehended in his car less
than a block from his house and placed under arrest for computer-related child
pornography offenses.  Within minutes of the arrest, the officer drove Tank's car
back to Tank's house, searched the car, and found a Zip disk *630 inside a
backpack.  The Zip disk was later shown to contain pornographic images of
children . . ."  Id. at 629.  The court held:

> It is undisputed that Tank was lawfully arrested.   As was the case in
> Moorehead, the agents had an arrest warrant.   The only other
> requirement for a valid "search incident to arrest" is that the search be
> "roughly contemporaneous" with the arrest.   Here, the arresting officer
> searched the car within minutes of the arrest, thereby satisfying the
> requirement that a search incident to a lawful arrest be conducted
> roughly contemporaneously with the arrest.[FN7]  Because the lawful arrest
> and the search were "roughly contemporaneous," the seizure of the Zip
> disk comported with the Fourth Amendment under the "search incident
> to arrest" exception.  Id. at 632.

The court noted that "[l]aw enforcement officers are permitted to search the entire passenger compartment of a car, including the inside of containers, during a "search incident to arrest." Id. at 631, n. 6. "Since the search of Tank's car was a legitimate 'search incident to arrest,' it was permissible for the agent to search the backpack and seize the Zip disk." Id. There was no discussion about whether a separate search warrant was needed to actually read the contents of the zip disk, but the court clearly stated that it was not the "plain view" exception to the warrant requirement that justified the search, it was the "incident to arrest" exception. In this case, the Zip disk was already contained within a container, the backpack. If the officers could open the backpack they could surely open the disk.

Lastly, there is no requirement that the officer limit his search to only that evidence that he will probably find that relates to the particular crime. In United States v. Osife, 398 F.3d 1143, 1114 (9th Cir. 2006), an officer arrested Mr. Osife, who was standing outside of his car, for indecent exposure because he urinated in a parking lot, handcuffed him, and placed him in the back of the patrol car. The officer then searched the car and found a gun. Mr. Osife argued that the Court's recent decision in Thornton restricts the holding of Belton to cases in which it is reasonable to believe that the automobile contains evidence related to the crime

Shepherd v. Jakeway, et.al.
3:01-cv-00333-JKS                    12

for which the defendant was arrested.  Id. at 1145-46.  The Ninth Circuit rejected

this limit and found that, under Belton, it was only necessary that the arrestee be a

recent occupant of the car.  398 F.3d at 1146.  The Court did not limit the search to

only evidence relevant to the crime which precipitated the arrest.

The cases discussed above collectively hold as follows:  1.  A search incident

to an arrest is a separate and valid exception to the warrant rule.  Chimel; 2.  The

exception allows a search of a room, as well as the passenger compartment of a

car, as long as the arrestee was a recent occupant.  Chimel, Hudson ; 3.  A search

can be conducted after the arrestee has been removed from the scene of the crime.

Thornton; McLaughlin; 4.  The search is not limited to a certain number of

minutes after the crime, but must be roughly contemporaneous with the arrest.

McLaughlin; 5.  Officers may open containers even when the contents are not

viewable.  McLaughlin, Tank;  5.  The search is not limited to evidence that is

related to the crime for which the arrestee is arrested.  Osife.

Under the law defining the "incident to arrest" exception to the warrant

requirement, Mr. Jakeway was allowed to search the scene of the crime after Mr.

Shepherd's apprehension, even after Mr. Shepherd was removed from the

bedroom.  Unlike the officers in Chimel, Mr. Jakeway limited his search to the

room in which Mr. Shepard was apprehended.  He searched the room without delay.  The videotape was located in near proximity to the bed, within Mr. Shepherd's immediate control.  Mr. Jakeway was allowed to open the videotape, a container, to determine if it contained evidence.  He was allowed to look at the videotape even if it had been labeled as an adult sex videotape because under Osife, he is not limited to searching for evidence strictly related to the crime for which Mr. Shepherd had been arrested.  Mr. Jakeway's search was similar to the search in Hudson, where the defendant was removed from a room and the officer then searched the room.

Mr. Jakeway, and other officers at the Shepherd's house, have maintained that they conducted a search incident to arrest.  Under the law, the search was legal and reasonable.  Despite the fact that the Court previously denied Mr. Jakeway's request for qualified immunity, it should reconsider its decision in light of the law related to searches incident to arrest, and the Supreme Court's recent ruling in Thorton, find that the search was legal, and grant Mr. Jakeway qualified immunity under the principles enunciated in its Order.  Docket 39 at 5-6.  After surveying the legal landscape of searches incident to arrest, the Court should find that the

Shepherd v. Jakeway, et.al.
3:01-cv-00333-JKS                  14

search was justified by the "incident to arrest" exception, legal and that no Fourth

Amendment violation took place.  Mr. Jakeway is entitled to qualified immunity.

II.    **MR. JAKEWAY WAS JUSTIFIED IN VIEWING THE VIDEOTAPE
       BECAUSE HIS SUBJECTIVE BELIEF THAT IT COULD BE A
       SUICIDE NOTE NEEDS TO BE CONSIDERED**.

        If the Court rejects the "incident to arrest" exception as justification for the

search, Mr. Jakeway was still justified in seizing and briefly viewing the videotape

under the plain view doctrine.  The "plain view" doctrine permits the warrantless

seizure by police of private possessions where three requirements are satisfied.

Texas v. Brown, 460 U.S. 730 (1983) (citing Coolidge v. New Hampshire, 403

U.S. 443 (1971)).  First, the police officer must lawfully make an "initial

intrusion" or otherwise properly be in a position from which he can view a

particular area.  Brown, at 736-37.  Second, the officer must discover

incriminating evidence "inadvertently," which is to say, he may not "know in

advance the location of [certain] evidence and intend to seize it," relying on the

plain view doctrine only as a pretext.  Id. at 737.  Finally, it must be "immediately

apparent" to the police that the items they observe may be evidence of a crime,

contraband, or otherwise subject to seizure.  Id.  In explaining the reasoning

behind the plain view doctrine, the Supreme Court stated in Brown that if police

Shepherd v. Jakeway, et.al.
3:01-cv-00333-JKS                    15

officers are lawfully engaged in activity in a particular place, and notice a suspicious object, they may seize it immediately.  Id. at 739.  "This rule merely reflects an application of the Fourth Amendment's central requirement of reasonableness to the law governing seizures of property."  Id.  The requirement of reasonableness applies equally to searches.  Arizona v. Hicks, 480 U.S. 321, 328 (1987).  The "degree of justification needed to establish the reasonableness of police action" is the same as applied to searches as seizures.  Id. at 328.  The search of objects in plain view requires probable cause.  Id. at 326.

"To fall within the plain view exception, two requirements must be met:  the officers must lawfully be searching the area where the evidence is found and the incriminating nature of the evidence must be immediately apparent."  U.S. v. Stafford, 416 F.3d 1068, 1076 (9th Cir. 2005) (quoting Roe v. Sherry, 91 F.3d 1270, 1272 (9th Cir. 1996) (citations omitted); see also Horton v. California, 496 U.S. 128, 135-37 (1990); Hicks, 480 U.S. at 326-27.

The requirement that the incriminating nature of the evidence be immediately apparent focuses on whether the officers had probably cause. Stafford, at 1076 (citations omitted).  "'A practical, non-technical probability that incriminating evidence is involved is all that is required.'"  Id.  The determination

Shepherd v. Jakeway, et.al.
3:01-cv-00333-JKS                    16

of whether an officer has probable cause to believe that items seized are associated with criminal activity is objective, but considers the "actual and/or perceived belief of the law enforcement officer as he . . . engages in search and seizure." United States v. Prim, 698 F.2d 972, 975 (9th Cir. 1983).  This standard does not require the officers to *know* that the item seized is illegal. See United States v. Cecil, 457 F.2d 1178, 1180 (8th Cir. 1972) (noting that, in a case involving plain view seizure of a sawed-off shotgun, "the observation of the gun gave probable cause for the reasonable belief that a crime, the possession of a contraband firearm, was being committed[,]" and that there is "no rule which requires an officer to have knowledge of all the elements of the crime when he views an article which reasonably appears to be contraband") (citation omitted); see also Horton, 496 U.S. at 130-33 (applying the plain view exception where the officers noticed *weapons* while executing a search warrant for the *proceeds* of a robbery; the officers knew that weapons had been used in the armed robbery and seized them accordingly).  Stafford, at 1076.

In Hudson, 100 F.3d at 1420, the Court considered whether the seizure of glassware, that was arguably out of the immediate control of an arestee, could be seized under the plain view exception to the warrant requirement.  In concluding

that the officer could seize the glassware which was found to contain methamphetamine, the Court considered the officer's knowledge that this type of glassware was often associated with methamphetamine manufacture, as well as his personal familiarity with the appearance of methamphetamine.  Id.  Thus, in protecting the search under the plain view doctrine, the Court relied heavily on the officer's personal knowledge and did not require that the obviousness of the criminal nature of the objects be recognizable by the general public.

Recently, in United States v. Gust, 405 F.3d 797 (9th Cir. 2005), the Ninth Circuit analyzed a case involving the "single-purpose container" exception to the warrant requirement.  It did not address the plain view exception to the warrant requirement.  It is unclear whether the same standards apply to both exceptions. The Ninth Circuit would not apply the "single purpose container" exception unless "the general public" could readily recognize the object by its container.  Id. at 804.

In applying the framework of the plain view exception to the warrant requirement to the facts of this case, it is clear that Mr. Jakeway conducted a reasonable search of the contents of the Shepherd videotape.  He was lawfully in the area where he discovered the videotape.  Mrs. Shepherd had provided consent to Ms. Birt to search her home for weapons.  Docket 39 at 2.  Assuming Mr.

Jakeway was searching pursuant to that consent, in addition to the incident to arrest exception to a warrant less search, he inadvertently discovered the videotape in the bedroom where criminal activity had taken place. Mr. Jakeway discovered the videotape between the gun cabinet and the wall of the bedroom. Id. at 3. To Mr. Jakeway, the tape seemed out of place and it could have contained a suicide note. Id. Mr. Jakeway had knowledge that in some cases of attempted suicide, individuals will videotape a suicide note. Ms. Birt also knew of such cases, having actually worked on two cases involving videotaped suicide notes. Id. This is why Ms. Birt gave Mr. Jakeway permission to view the videotape.[4] Id. at 3; Ex. B at 17. Both officers were familiar with suicides notes on videotape, in the same way as the officer in Hudson, was familiar with methamphetamine manufacture and the drug's appearance. The conspicuous location of the videotape, combined with Mr. Jakeway's knowledge, led him to reasonably believe that the videotape was evidence of a suicide attempt. Thus, the incriminating nature of the videotape was immediately apparent to them. Moreover, a reasonable juror might conclude that the general public would recognize the possibility that a person would record a suicide note and leave it in the room where he committed suicide. Although the

---

[4] Mr. Jakeway held the videotape up, showed it to his supervisor, Ms. Birt, and said, "What do you think?" Ms. Birt responded, "Check it out." Ex. B. at 17.

Shepherd v. Jakeway, et.al.
3:01-cv-00333-JKS                19

agent's subjective point of view is not controlling, it should be given some weight in determining whether the incriminating nature of the evidence was apparent. Moreover, Mr. Jakeway had probable cause to believe the videotape contained evidence of an attempted suicide.

Probable cause does not require a certainty that the thing to be searched contains evidence of a crime. Probable cause does not require a showing that the officer's belief that the item is evidence of a crime be correct or more likely true than false. Texas, 460 U.S. at 742 (citing Carroll v. United States, 267 U.S. 132, 162 (1925)). Mr. Jakeway was not required to be absolutely certain about the contents of the videotape. The test is one of reasonableness. Given the information that Mr. Jakeway possessed, he reasonably believed that the tape contained evidence of an attempted suicide. Thus, his brief search of the tape was justified under the plain view exception to the warrant requirement.

## CONCLUSION

In its Order, the Court twice stated that the search was incident to arrest. With the advent of Thornton, decided after the Court's prior Order, it is clear that after an arrest, officers may search without a warrant, incident to the arrest, even after the arrestee is removed from the scene of the crime and the object found is

not related to the crime for which the arrestee was arrested.  Mr. Jakeway's search of the videotape was legal as a search incident to an arrest.

In alternative, the search was legal as a plain view search.  Although not controlling, Courts can consider the officer's subjective observation in deciding whether on the face of the tape it was apparent that the videotape could be a suicide note.

Under either theory, the government asks the court to find that the search was legal and therefore, Mr. Jakeway is entitled to qualified immunity.

Respectfully requested this 23rd day of June, 2006.

DEBORAH M. SMITH
Acting United States Attorney

s/ Susan J. Lindquist
Assistant U. S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-3378
Fax: (907) 271-2344
E-mail: susan.lindquist@usdoj.gov
AK #9008053

**CERTIFICATE OF SERVICE**
I hereby certify that on June 23, 2006,
a copy of the foregoing **UNITED STATE'S
MOTION TO ESTABLISH THAT THE
VIDEOTAPE WAS LEGALLY SEARCHED**
was served electronically on Yale H. Metzger,
and by U.S. mail on LeRoy E.DeVeaux.
s/ Susan J. Lindquist

Shepherd v. Jakeway, et al.
Case No. 3:01-cv-333-JKS                    21