Yale H. Metzger
Alaska Bar No. 9512082
Law Offices of Yale H. Metzger
101 East 9th Avenue, Suite 7A
Anchorage, Alaska 99501
Telephone (907) 258-4110

LeRoy E. DeVeaux
DeVeaux & Associates, A.P.C.
Alaska Bar No. 7310040
701 West 41st Avenue, Suite 201
Anchorage, Alaska 99503
Telephone (907) 565-2906

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| **ELISHA SHEPHERD,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **MILTON J. JAKEWAY, and** | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | Case No.A01-333 Civil (JKS) |
| Defendants. | ) | |

**OPPOSITION DEFENDANTS' MOTION TO
ESTABLISH THAT THE VIDEOTAPE WAS LEGALLY SEARCHED
AND
MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO STRIKE
OR FOR RELIEF PURSUANT TO CIVIL RULE 56(f)
AND
CROSS-MOTION FOR SUMMARY JUDGMENT**

Elisha Shepherd, through her attorneys, opposes the Defendants' Motion to Establish that the Videotape was Legally Searched and Motion and Memorandum in Support of Motion to Strike and Cross-Motion for Summary Judgment.

The Defendant's motion is an untimely effort to gain an unfair advantage by filing a dispositive motion for the first time after the deadline and after there is any possibility for the Plaintiff to conduct discovery to oppose the motion. As such, the motion should be struck as untimely. To the extent

that the Defendants seek to have the Court reconsider its decision at Docket 39, the motion is an untimely motion for reconsideration.

If the motion is not struck, the Plaintiff should be permitted to file her cross-motion for summary judgment. If the motions are permitted, the Defendant's motion should be denied and the Plaintiff's cross-motion should be granted. Alternatively, the Plaintiff seeks relief pursuant to Rule 56(f) to conduct discovery on the relevant factual issues.

**Facts**

The prior record in the present case, particularly the briefs and exhibits leading to the Court's order at Docket 39, are incorporated herein by reference, and demonstrate that the Plaintiff's husband was found by the Defendants unconscious in his bed in his bedroom at his residence on Ft. Richardson, Alaska in November 2000. He was taken into custody by several MPs, CID and MIP agents and removed from the residence, after which the Defendants conducted a search and located the Shepherd video tape between a bedroom wall and gun cabinet. The video tape depicted Mr. and Mrs. Shepherd engaged in sexual relations. There is no suggestion by the Defendants, and no evidence in the record, that the video tape was thought to be a weapon. There is no evidence in the record that the video tape was at risk of being destroyed. In fact, the undisputed testimony of Milton Jakeway and Michael Wisel, quoted by the Court at Docket 39, page 7, was that the video tape was not at risk of being destroyed as no exigent circumstances existed with respect to the tape. It is undisputed that a non-consensual and

2

warrantless viewing of the contents of the Shepherd video tape
was conducted at the Shepherd residence after the government
took Mr. Shepherd out of his residence and after the Defendants
took control of the Shepherd residence.

### Discussion

The Defendants seek reconsideration of the Court's order at
Docket 39 denying their motion for summary judgment regarding
the issue of the "plain view" doctrine.  The Defendants also
seek summary judgment that their warrantless viewing of the
Shepherd video tape was lawful as a search incident to arrest
and because the tape was in plain view.  The Plaintiff seeks
summary judgment that the search of the contents of the video
tape was illegal, violated her Fourth Amendment Right and
intentionally caused her emotional distress.

### I.  SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate when there are no genuine
issues of material fact and the moving party is entitled to
judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "The plain
language of Rule 56(c) mandates the entry of summary judgment,
after adequate time for discovery and upon motion, against a
party who fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and on
which that party will bear the burden of proof at trial."
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is on the moving party to show that
there is an absence of genuine issues of material facts.
Celotex, 477 U.S. at 325.  If the moving party meets its initial
burden, then the non-movant must set forth specific facts

showing that there is a genuine issue for trial.  <u>Anderson v.
Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

In deciding a motion for summary judgment, the court views
the evidence on the non-movant in a light most favorable to that
party, and all justifiable inferences are also to be drawn in
the non-moving party's favor.  <u>Anderson</u>, 477 U.S. at 255.
"[t]he court's ultimate inquiry is to determine whether the
'specific facts' set forth by the non-moving party, coupled with
undisputed background or contextual facts, are such that a
rational or reasonable jury might return a verdict in its favor
based on that evidence."  <u>T.W. Elec. Service, Inc. v. Pacific
Elec. Contractors Ass'n</u>, 809 F.2d 631 (9th Cir. 1987).

II.  **THE SUBJECT SEARCH WAS NOT LAWFUL AS INCIDENT TO ARREST.**

The non-consensual and warrantless search of the Shepherd
video tape was not lawful under the "incident to arrest"
doctrine.

The Plaintiff does not dispute that a warrantless search
may sometimes be lawfully performed incident to an arrest as was
approved by the United States Supreme Court in <u>Chimel v.
California</u>, 395 U.S. 752 (1969).  In <u>United States v. Hudson</u>,
the Ninth Circuit recognized:

> A "search incident to arrest" is an exception to the
> general rule against warrantless searches.  <u>McConney</u>,
> 728 F.2d at 1206.  The justification for permitting a
> warrantless search is the "need [of law enforcement
> officers] to seize weapons or other things which might
> be used to assault an officer or effect an escape, as
> well as the need to prevent the loss or destruction of
> evidence.  (Citation omitted.)

> A legitimate "search incident to arrest" is limited to
> the arrestee's person and to the area "within the
> immediate control," meaning "the area from within
> which he might gain possession of a weapon or

4

destructible evidence." <u>Chimel</u>, 395 U.S. at 763, 89
S.Ct. at 2040 (internal quotation marks omitted).  In
determining whether a search is justified under the
"search incident to arrest" exception, therefore, the
critical inquiry is "whether the search . . . was
properly limited to the area within [the arrestee's]
immediate control at the time of his arrest."
<u>McConney</u>, 728 F.2d at 1207.  In evaluating the
validity of such a search, courts are to weigh such
factors as the number of persons being arrested, the
number of officers present, their physical positioning
with regard to the arrestee and the premises being
searched, the display of guns by the officers, and the
distance between the arrestee and the place searched.

100 F.3d 1409, 1419 (9th Cir. 1996).

However, not all searches incident to an arrest are lawful.

Eight years after <u>Chimel</u>, the United States Supreme Court, in

<u>United States v. Chadwick</u>, 433 U.S. 1 (1977), explained one of

the limitations on warrantless searches incident to an arrest:

Once law enforcement officers have reduced luggage or
other personal property not immediately associated
with the person of the arrestee to their exclusive
control, and there is no longer any danger that the
arrestee might gain access to the property to seize a
weapon or destroy evidence, a search of that property
is no longer an incident to the arrest.

433 U.S. at 15, 97 S.Ct. at 2485.

In the present case, Mr. Shepherd was found in bed in his

upstairs bedroom and unconscious.  He was taken into custody in

his bedroom by Agent Birt, Agent Wisel and Agent Jakeway.  He

was then taken downstairs and removed from his residence.  The

Defendants have never asserted that they searched the Shepherd

video tape as a potential weapon.  Instead, the Defendants

assert that they searched the contents of the Shepherd video

tape because they suspected that it might contain evidence in

the form of a suicide note.  The Defendants were in exclusive

control of the Shepherd residence and video tape at that point.

There was no danger whatsoever that Mr. Shepherd could retrieve
the Shepherd video tape from between the gun cabinet and destroy
it, assuming that the Defendants could reasonably argue that
they believe it may have contained a suicide note.  Once the
Defendants had Mr. Shepherd in custody, downstairs and outside
the residence, they had reduced the bedroom location of the
video tape to their exclusive control, and there was no longer
any danger that anyone might gain access to the video tape and
destroy evidence.  Therefore, the search of the contents of the
video tape was no longer an incident to the arrest as mandated
by the U.S. Supreme Court in <u>Chadwick</u>.  In <u>Chadwick</u>, the United
States attempted to advance a similarly flawed argument to the
one they make in the  present case.  Justice Brennan, in his
concurring opinion, stated:

> First, I agree wholeheartedly with my brother BLACKMUN
> that it is "unfortunate" that the Government in this
> case "sought . . . to vindicate an extreme view of the
> Fourth Amendment."  <u>Post,</u> at 2486.  It is unfortunate,
> in my view, not because this argument somehow
> "distract[ed] the Court from other more meritorious
> arguments made by the Government - these arguments are
> addressed and convincingly rejected in the Court's
> opinion - but because it is deeply distressing that
> the Department of Justice, whose mission is to protect
> the constitutional liberties of the people of the
> United States, should even appear to be seeking to
> subvert them by extreme and dubious legal arguments.
> It is gratifying that the Court today unanimously
> rejects the government's position.

433 U.S at 16, 97 S.Ct. at 2486.

As was noted by Justice Brennan in <u>Chadwick</u>, the Defendants
should have had as their mission to protect the constitutional
liberties of Mrs. Shepherd - not infringe on them.  In the
present case, as in <u>Chadwick</u>, the Defendants attempt to advance
a, "extreme and dubious legal argument[]" in an effort to

6

justify their illegal conduct.

For the foregoing reasons, the Defendants are not entitled to summary judgment that their warrantless and non-consensual search of the contents of the Shepherd video tape was lawful as a result of the "incident to arrest" doctrine.

## III.   THE SUBJECT SEARCH WAS NOT LAWFUL AS A PLAIN VIEW SEARCH.

The Defendants' plain view argument for their warrantless non-consensual search of the Shepherd video tape was already rejected by the Court.  (Docket 39, p.p. 11-39.)   The Defendants now seek what they couch as an untimely summary judgment motion, which is actually an untimely motion for reconsideration.

The Court, in response to the Defendants' plain view argument, previously found as follows:

> The Court finds that Shepherd had a privacy interest in her videotape that was unlawfully violated when Jakeway viewed its contents.
>
> .  .  .  .
>
> Consequently, viewing the videotape at the crime scene without a warrant, probable cause, or an exception to probable cause was an unreasonable invasion of Shepherd's privacy and unlawful.   There is no reason, absent pure curiosity or, in the event it was labeled, lascivious motives, for the officers to view the videotape at the scene rather than seizing it and securing a warrant.

(Docket 39, p.p. 11-13.)

The Court found the above after a careful analysis of the plain view doctrine.   The law of "plain view" in the Ninth Circuit in 2000, when U.S. Army C.I.D. Agent Milton Jakeway found and conducted a non-consensual and warrantless viewing of the contents of a video tape at Elisha Shepherd's residence was:

> In <u>Robins v. California</u>, a plurality of four justices elaborated on the "single-purpose container"

7

exception, explaining that the exception is:

> **little more than another variation of the
> "plain view" exception** (emphasis added)
> (footnote omitted), since, if the
> distinctive configuration of a container
> proclaims its contents, the contents cannot
> be fairly said to have been removed from a
> searching officer's view.  The same would be
> true, of course, if the container were
> transparent, or otherwise clearly revealed
> its contents.  In short, the negative
> implication of footnote 13 of the <u>Sanders</u>
> opinion is that, unless the container is
> such that its contents may be said to be in
> plain view, those contents are fully
> protected by the Fourth Amendment.

453 U.S. 420, 427, 101 S.Ct. 2841, 69 L.Ed.2d 744
(1981) (plurality opinion), <u>overruled on other grounds
by United States v. Ross</u>, 456 U.S. 798, 102 S.Ct.
2157, 72 L.Ed.2d 572 (1982).  (Footnote omitted.)

<u>U.S. v. Gust</u>, 405 F.3d 797, 800-01 (9th Cir. 2005) (police were

required to obtain a search warrant to search gun case for gun

since it could have contained something other than a gun).

Since Agent Jakeway maintains that the subject video tape

contained no label, he cannot argue that the contents of the

video tape were such that they were in plain view.  The Court

correctly noted this when it found:

> However, even assuming that [Jakeway] could have
> obtained a warrant he still does not present enough
> evidence to show that a warrantless viewing at the
> crime scene was lawful.  This is so because even
> taking the evidence in light most favorable to Jakeway
> -- by assuming that the tape was not labeled -- no
> reasonable officer would believe that viewing the tape
> was lawful because there was nothing immediately
> apparent about the tape that would suggest that it
> contained incriminating footage.

(Docket 39, p. 9.)

Additionally, the Court found:

> An allegedly unmarked videotape on the floor of the
> bedroom where Shepherd's husband threatened to commit
> suicide while very intoxicated creates significant
> doubt as to the certainty of the contents of that
> videotape.

(Docket 39, p. 11.)

The Court's findings at Docket 39 are consistent with the
mandatory binding authority in the Ninth Circuit in U.S. v.
Gust, 405 F.3d 797, 800-01 (9th Cir. 2005). Agent Jakeway was
not authorized by any legal authority, particularly in the Ninth
Circuit, to conduct a non-consensual, warrantless search of the
contents of the Shepherd video tape under the plain view
doctrine. The mandatory binding authority on Agent Jakeway in
the Ninth Circuit, as reaffirmed in Gust, required Agent Jakeway
to secure the Shepherd video tape while he sought a search
warrant if he wanted to view its contents.

The foregoing supports the Court's finding at Docket 39, p.
11, "that Shepherd had a privacy interest in her videotape that
was unlawfully violated when Jakeway viewed its contents."

For the foregoing reasons, if the Court is inclined to
revisit the issue of plain view searches, the Defendants are not
entitled to reconsideration or summary judgment that their
warrantless and non-consensual search of the contents of the
Shepherd video tape was lawful as a result of the "plain view"
doctrine. Instead, the Plaintiff is entitled to rely on the
previous findings of the Court that "Shepherd had a privacy
interest in her videotape that was unlawfully violated when
Jakeway viewed its contents." (Docket 39, p. 11.)

## Conclusion

The Defendants should not be permitted, after the close of discovery, even after the initial trial date has passed, to now seek summary judgment or reconsideration of the Court's prior findings and order. However, if the Court is inclined to consider the Defendant's motion, and reconsider its prior findings and order, when the facts in the present case are viewed in a light most favorable to Mrs. Shepherd, the Defendants are not entitled to judgment as a matter of law. The subject warrantless and non-consensual search was not justified by the need to prevent evidence from being destroyed or to prevent the arrested person from seizing a weapon that could harm the Defendants. Likewise, the contents of the video tape were not readily apparent, and therefore were not in plain view. As such, the Defendants' summary judgment motion should be denied. If the Court does not strike or deny the Defendants' motion, the Plaintiff requests that she be provided relief pursuant to Civil Rule 56(f) to conduct discovery into the issue of whether the subject search was lawful as incident to arrest.

Alternatively, when the facts are viewed in a light most favorable to the Defendants, Ms. Shepherd is entitled to judgment as a matter of law, as the Court previously found, that her rights were violated and she is entitled to summary judgment on her Fourth Amendment claim.

**DATED** this _10TH_ day of July 2006 at Anchorage, Alaska.

The Law Offices of Yale H. Metzger
Attorney for the Plaintiff

Yale H. Metzger
101 E. 9th Ave., Suite 7
Anchorage, AK 99501
Phone: (907) 258-4110
Fax: (907) 277-1894
Email: yhmetzger@aol.com
Alaska Bar No. 9512082

DeVeaux & Associates
Attorney for the Plaintiff

LeRoy E. (Gene) DeVeaux
701 West 41st Avenue, Suite 201
Anchorage, Alaska 99503
Telephone (907) 565-2906
Alaska Bar No. 7310040

A true and correct copy of the
foregoing was served electronically
to the following this _10TH_ day of
July 2006:

Susan Lindquist, Esq.
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West 7th Avenue, No. 9, Room 253
Anchorage, Alaska 99513-7567

Yale H. Metzger