Yale H. Metzger
Alaska Bar No. 9512082
Law Offices of Yale H. Metzger
101 East 9th Avenue, Suite 7A
Anchorage, Alaska 99501
Telephone (907) 258-4110

LeRoy E. DeVeaux
DeVeaux & Associates, A.P.C.
Alaska Bar No. 7310040
701 West 41st Avenue, Suite 201
Anchorage, Alaska 99503
Telephone (907) 565-2906

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ELISHA SHEPHERD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| MILTON J. JAKEWAY, and UNITED STATES OF AMERICA, | ) ) ) ) Case No. A01-333 Civil (JKS) |
| Defendants. | ) ) |

**MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO STRIKE
OR FOR RELIEF PURSUANT TO CIVIL RULE 56(f)**

Elisha Shepherd, through her attorneys, opposes the Defendants' Motion to Establish that the Videotape was Legally Searched and Motion and Memorandum in Support of Motion to Strike and Cross-Motion for Summary Judgment.

The Defendant's motion is an untimely effort to gain an unfair advantage by filing a dispositive motion for the first time after the deadline and after there is any possibility for the Plaintiff to conduct discovery to oppose the motion. As such, the motion should be struck as untimely. To the extent that the Defendants seek to have the Court reconsider its decision at Docket 39, the motion is an untimely motion for

1

reconsideration.

If the motion is not struck, the Plaintiff should be permitted to file her cross-motion for summary judgment. If the motions are permitted, the Defendant's motion should be denied and the Plaintiff's cross-motion should be granted. Alternatively, the Plaintiff seeks relief pursuant to Rule 56(f) to conduct discovery on the relevant factual issues.

**Facts**

The prior record in the present case, particularly the briefs and exhibits leading to the Court's order at Docket 39, are incorporated herein by reference, and demonstrate that the Plaintiff's husband was found by the Defendants unconscious in his bed in his bedroom at his residence on Ft. Richardson, Alaska in November 2000. He was taken into custody by several MPs, CID and MIP agents and removed from the residence, after which the Defendants conducted a search and located the Shepherd video tape between a bedroom wall and gun cabinet. The video tape depicted Mr. and Mrs. Shepherd engaged in sexual relations. There is no suggestion by the Defendants, and no evidence in the record, that the video tape was thought to be a weapon. There is no evidence in the record that the video tape was at risk of being destroyed. In fact, the undisputed testimony of Milton Jakeway and Michael Wisel, quoted by the Court at Docket 39, page 7, was that the video tape was not at risk of being destroyed as no exigent circumstances existed with respect to the tape. It is undisputed that a non-consensual and warrantless viewing of the contents of the Shepherd video tape was conducted at the Shepherd residence after the government

took Mr. Shepherd out of his residence and after the Defendants took control of the Shepherd residence.

## Discussion

The Defendants seek reconsideration of the Court's order at Docket 39 denying their motion for summary judgment regarding the issue of the "plain view" doctrine. The Defendants also seek summary judgment that their warrantless viewing of the Shepherd video tape was lawful as a search incident to arrest and because the tape was in plain view. The Plaintiff seeks summary judgment that the search of the contents of the video tape was illegal, violated her Fourth Amendment Right and intentionally caused her emotional distress.

I. **SUMMARY JUDGMENT STANDARD.**

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is on the moving party to show that there is an absence of genuine issues of material facts. Celotex, 477 U.S. at 325. If the moving party meets its initial burden, then the non-movant must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

In deciding a motion for summary judgment, the court views the evidence on the non-movant in a light most favorable to that party, and all justifiable inferences are also to be drawn in the non-moving party's favor. <u>Anderson</u>, 477 U.S. at 255. "[t]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the non-moving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." <u>T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 631 (9th Cir. 1987).

## II. THE SUBJECT SEARCH WAS NOT LAWFUL AS INCIDENT TO ARREST.

The non-consensual and warrantless search of the Shepherd video tape was not lawful under the "incident to arrest" doctrine.

The Plaintiff does not dispute that a warrantless search may sometimes be lawfully performed incident to an arrest as was approved by the United States Supreme Court in <u>Chimel v. California</u>, 395 U.S. 752 (1969). In <u>United States v. Hudson</u>, the Ninth Circuit recognized:

> A "search incident to arrest" is an exception to the general rule against warrantless searches. <u>McConney</u>, 728 F.2d at 1206. The justification for permitting a warrantless search is the "need [of law enforcement officers] to seize weapons or other things which might be used to assault an officer or effect an escape, as well as the need to prevent the loss or destruction of evidence. (Citation omitted.)
>
> A legitimate "search incident to arrest" is limited to the arrestee's person and to the area "within the immediate control," meaning "the area from within which he might gain possession of a weapon or destructible evidence." <u>Chimel</u>, 395 U.S. at 763, 89 S.Ct. at 2040 (internal quotation marks omitted). In determining whether a search is justified under the "search incident to arrest" exception, therefore, the

4

> critical inquiry is "whether the search . . . was properly limited to the area within [the arrestee's] immediate control at the time of his arrest." McConney, 728 F.2d at 1207. In evaluating the validity of such a search, courts are to weigh such factors as the number of persons being arrested, the number of officers present, their physical positioning with regard to the arrestee and the premises being searched, the display of guns by the officers, and the distance between the arrestee and the place searched.

100 F.3d 1409, 1419 (9th Cir. 1996).

However, not all searches incident to an arrest are lawful. Eight years after Chimel, the United States Supreme Court, in United States v. Chadwick, 433 U.S. 1 (1977), explained one of the limitations on warrantless searches incident to an arrest:

> Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident to the arrest.

433 U.S. at 15, 97 S.Ct. at 2485.

In the present case, Mr. Shepherd was found in bed in his upstairs bedroom and unconscious. He was taken into custody in his bedroom by Agent Birt, Agent Wisel and Agent Jakeway. He was then taken downstairs and removed from his residence. The Defendants have never asserted that they searched the Shepherd video tape as a potential weapon. Instead, the Defendants assert that they searched the contents of the Shepherd video tape because they suspected that it might contain evidence in the form of a suicide note. The Defendants were in exclusive control of the Shepherd residence and video tape at that point. There was no danger whatsoever that Mr. Shepherd could retrieve the Shepherd video tape from between the gun cabinet and destroy

5

it, assuming that the Defendants could reasonably argue that they believe it may have contained a suicide note. Once the Defendants had Mr. Shepherd in custody, downstairs and outside the residence, they had reduced the bedroom location of the video tape to their exclusive control, and there was no longer any danger that anyone might gain access to the video tape and destroy evidence. Therefore, the search of the contents of the video tape was no longer an incident to the arrest as mandated by the U.S. Supreme Court in Chadwick. In Chadwick, the United States attempted to advance a similarly flawed argument to the one they make in the present case. Justice Brennan, in his concurring opinion, stated:

> First, I agree wholeheartedly with my brother BLACKMUN that it is "unfortunate" that the Government in this case "sought . . . to vindicate an extreme view of the Fourth Amendment." Post, at 2486. It is unfortunate, in my view, not because this argument somehow "distract[ed] the Court from other more meritorious arguments made by the Government - these arguments are addressed and convincingly rejected in the Court's opinion - but because it is deeply distressing that the Department of Justice, whose mission is to protect the constitutional liberties of the people of the United States, should even appear to be seeking to subvert them by extreme and dubious legal arguments. It is gratifying that the Court today unanimously rejects the government's position.

433 U.S at 16, 97 S.Ct. at 2486.

As was noted by Justice Brennan in Chadwick, the Defendants should have had as their mission to protect the constitutional liberties of Mrs. Shepherd - not infringe on them. In the present case, as in Chadwick, the Defendants attempt to advance an, "extreme and dubious legal argument[]" in an effort to justify their illegal conduct.

For the foregoing reasons, the Defendants are not entitled

6

to summary judgment that their warrantless and non-consensual search of the contents of the Shepherd video tape was lawful as a result of the "incident to arrest" doctrine.

### III. THE SUBJECT SEARCH WAS NOT LAWFUL AS A PLAIN VIEW SEARCH.

The Defendants' plain view argument for their warrantless non-consensual search of the Shepherd video tape was already rejected by the Court. (Docket 39, p.p. 11-39.) The Defendants now seek what they couch as an untimely summary judgment motion, which is actually an untimely motion for reconsideration.

The Court, in response to the Defendants' plain view argument, previously found as follows:

> The Court finds that Shepherd had a privacy interest in her videotape that was unlawfully violated when Jakeway viewed its contents.
>
> . . . .
>
> Consequently, viewing the videotape at the crime scene without a warrant, probable cause, or an exception to probable cause was an unreasonable invasion of Shepherd's privacy and unlawful. There is no reason, absent pure curiosity or, in the event it was labeled, lascivious motives, for the officers to view the videotape at the scene rather than seizing it and securing a warrant.

(Docket 39, p.p. 11-13.)

The Court found the above after a careful analysis of the plain view doctrine. The law of "plain view" in the Ninth Circuit in 2000, when U.S. Army C.I.D. Agent Milton Jakeway found and conducted a non-consensual and warrantless viewing of the contents of a video tape at Elisha Shepherd's residence was:

> In <u>Robins v. California</u>, a plurality of four justices elaborated on the "single-purpose container" exception, explaining that the exception is:
>
> > **little more than another variation of the "plain view" exception** (emphasis added)

7

> (footnote omitted), since, if the distinctive configuration of a container proclaims its contents, the contents cannot be fairly said to have been removed from a searching officer's view. The same would be true, of course, if the container were transparent, or otherwise clearly revealed its contents. In short, the negative implication of footnote 13 of the <u>Sanders</u> opinion is that, unless the container is such that its contents may be said to be in plain view, those contents are fully protected by the Fourth Amendment.
>
> 453 U.S. 420, 427, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981) (plurality opinion), <u>overruled on other grounds by United States v. Ross</u>, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). (Footnote omitted.)

<u>U.S. v. Gust</u>, 405 F.3d 797, 800-01 (9th Cir. 2005) (police were required to obtain a search warrant to search gun case for gun since it could have contained something other than a gun).

Since Agent Jakeway maintains that the subject video tape contained no label, he cannot argue that the contents of the video tape were such that they were in plain view. The Court correctly noted this when it found:

> However, even assuming that [Jakeway] could have obtained a warrant he still does not present enough evidence to show that a warrantless viewing at the crime scene was lawful. This is so because even taking the evidence in light most favorable to Jakeway -- by assuming that the tape was not labeled -- no reasonable officer would believe that viewing the tape was lawful because there was nothing immediately apparent about the tape that would suggest that it contained incriminating footage.

(Docket 39, p. 9.)

Additionally, the Court found:

> An allegedly unmarked videotape on the floor of the bedroom where Shepherd's husband threatened to commit suicide while very intoxicated creates significant doubt as to the certainty of the contents of that videotape.

(Docket 39, p. 11.)

The Court's findings at Docket 39 are consistent with the mandatory binding authority in the Ninth Circuit in U.S. v. Gust, 405 F.3d 797, 800-01 (9th Cir. 2005). Agent Jakeway was not authorized by any legal authority, particularly in the Ninth Circuit, to conduct a non-consensual, warrantless search of the contents of the Shepherd video tape under the plain view doctrine. The mandatory binding authority on Agent Jakeway in the Ninth Circuit, as reaffirmed in Gust, required Agent Jakeway to secure the Shepherd video tape while he sought a search warrant if he wanted to view its contents.

The foregoing supports the Court's finding at Docket 39, p. 11, "that Shepherd had a privacy interest in her videotape that was unlawfully violated when Jakeway viewed its contents."

For the foregoing reasons, if the Court is inclined to revisit the issue of plain view searches, the Defendants are not entitled to reconsideration or summary judgment that their warrantless and non-consensual search of the contents of the Shepherd video tape was lawful as a result of the "plain view" doctrine. Instead, the Plaintiff is entitled to rely on the previous findings of the Court that "Shepherd had a privacy interest in her videotape that was unlawfully violated when Jakeway viewed its contents." (Docket 39, p. 11.)

## Conclusion

The Defendants should not be permitted, after the close of discovery, even after the initial trial date has passed, to now seek summary judgment or reconsideration of the Court's prior findings and order. However, if the Court is inclined to consider the Defendant's motion, and reconsider its prior findings and order, when the facts in the present case are viewed in a light most favorable to Mrs. Shepherd, the Defendants are not entitled to judgment as a matter of law. The subject warrantless and non-consensual search was not justified by the need to prevent evidence from being destroyed or to prevent the arrested person from seizing a weapon that could harm the Defendants. Likewise, the contents of the video tape were not readily apparent, and therefore were not in plain view. As such, the Defendants' summary judgment motion should be denied. If the Court does not strike or deny the Defendants' motion, the Plaintiff requests that she be provided relief pursuant to Civil Rule 56(f) to conduct discovery into the issue of whether the subject search was lawful as incident to arrest.

Alternatively, when the facts are viewed in a light most favorable to the Defendants, Ms. Shepherd is entitled to judgment as a matter of law, as the Court previously found, that her rights were violated and she is entitled to summary judgment on her Fourth Amendment claim.

**DATED** this ____ day of August 2006 at Anchorage, Alaska.

                        The Law Offices of Yale H. Metzger
                        Attorney for the Plaintiff

                        _____
                        Yale H. Metzger
                        101 E. 9th Ave., Suite 7
                        Anchorage, AK 99501
                        Phone: (907) 258-4110
                        Fax: (907) 277-1894
                        Email: yhmetzger@aol.com
                        Alaska Bar No. 9512082

                        DeVeaux & Associates
                        Attorney for the Plaintiff

                        _____
                        LeRoy E. (Gene) DeVeaux
                        701 West 41st Avenue, Suite 201
                        Anchorage, Alaska 99503
                        Telephone (907) 565-2906
                        Alaska Bar No. 7310040

A true and correct copy of the
foregoing was served electronically
to the following this ____ day of
August 2006:

Susan Lindquist, Esq.
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West 7th Avenue, No. 9, Room 253
Anchorage, Alaska 99513-7567

_____
Yale H. Metzger