DUPLICATE
Doc #196

Yale H. Metzger
Alaska Bar No. 9512082
Law Offices of Yale H. Metzger
101 East 9th Avenue, Suite 7A
Anchorage, Alaska 99501
Telephone (907) 258-4110

LeRoy E. DeVeaux
DeVeaux & Associates, A.P.C.
Alaska Bar No. 7310040
701 West 41st Avenue, Suite 201
Anchorage, Alaska 99503
Telephone (907) 565-2906

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

ELISHA SHEPHERD,         )
                         )
         Plaintiff,      )
                         )
    v.                   )
                         )
MILTON J. JAKEWAY, and   )
UNITED STATES OF AMERICA,)
                         )  Case No. A01-333 Civil (JKS)
         Defendants.     )
_____)

**MEMORANDUM IN SUPPORT OF MOTION FOR JNOV
(RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW) AND NEW TRIAL
AND CLOSING ARGUMENT ON PLAINTIFF'S FTCA CLAIM**

COMES NOW the Plaintiff Elisha Shepherd, through her attorneys, submits (1) her memorandum in support of her motion for JNOV (Renewed Motion for Judgment as a Matter of Law), and (2) closing argument on her Federal Tort Claims Act ("FTCA") claim in the captioned case.

### Introduction

The Court previously ruled that Milton Jakeway violated Elisha Shepherd's right under the 4th Amendment of the United States Constitution when he conducted a warrantless search of the contents of her video tape depicting her and her husband in

1

sexual relations. (Docket 170.) The Court had previously found that "[t]here is no reason, absent pure curiosity or, in the event it was labeled, lascivious motives, for the officers to view the videotape at the scene rather than seizing it and securing a warrant." (Docket 39, p. 13.) The case proceeded to a jury trial on the Plaintiff's constitutional claim against Milton Jakeway and as an advisory jury on her claim under the Federal Tort Claims Act against the United States for the tort of intentional infliction of emotional distress. The jury concluded that Milton Jakeway's conduct in viewing the subject videotape did not cause Elisha Shepherd to suffer harm. (Docket 191.) In its capacity of an advisory jury, the jury also found for the United States on Elisha Shepherd's tort claim for intentional infliction of emotional distress. For the following reasons, the jury was clearly mistaken in its findings.

I. **THE PLAINTIFF IS ENTITLED TO JUDGMENT NOTWITHSTANDING THE VERDICT ON HER FEDERAL CONSTITUTIONAL CLAIM.**

The jury heard undisputed evidence that the Defendants' conduct in illegally viewing the contents of the Plaintiff's private video tape caused embarrassment and humiliation to the Plaintiff. At the close of evidence, the Plaintiff moved for a directed verdict. The motion was denied. Notwithstanding having heard undisputed evidence of causation, the jury found that the Defendants' illegal viewing of the Plaintiff's video tape was not the cause of any harm to her in her federal constitutional claim. The Plaintiff then renewed her motion by moving for a judgment notwithstanding the verdict. She now requests that the Court order a new trial on the issue of her

emotional distress damages caused by the Defendant Milton Jakeway's violation of her Constitutional right that the Court already rules he violated as a matter of law.

Fed. R. Civ. P. 50(c) provides for the renewal of a motion for a directed verdict after the return of a jury verdict. A renewed motion for judgment as a matter of law may be granted if the evidence, construed in a light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict. <u>Gilbrook v. City of Westminster</u>, 177 F.3d 839, 864 (9th Cir. 1999).

Fed R. Civ. P. 59(a) provides:

> **(a) Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . .
>
> **(b) Time for Motion.** Any motion for a new trial shall be filed no later than 10 days after entry of the judgment.

No judgment has been entered in the captioned case. As such, the time for filing a motion for a new trial under Fed. R. Civ. P. 59 has not yet started to run.

The jury in the captioned case found that, with respect to the Plaintiff's constitutional claim, that the conduct of the Defendant was not the cause of her harm, including embarrassment and humiliation. (Docket 191.) This finding is clearly erroneous and against the weight of the undisputed evidence that the Defendants' conduct caused the Plaintiff to suffer both embarrassment and humiliation. The evidence taken as a whole supports only one reasonable conclusion, that Elisha Shepherd

3

suffered embarrassment and humiliation caused by learning of the Defendant Milton Jakeway's illegal search of her video tape.

Elisha Shepherd and David Sandberg testified that Ms. Shepherd suffered harm caused by the Defendant Milton Jakeway viewing the contents of her video tape. During trial, the only expert witness that testified on behalf of the Defendants with respect to the Plaintiff's damages was David Sperbeck, Ph.D. Dr. Sperbeck testified as follows:

(Mr. DeVeaux) Q   What --

(Dr. Sperbeck) A   And as I've already elaborated, that did not constitute an injury. It may have been insulting, it might have made her feel badly, she might have felt ashamed or humiliated, but that did not cause her injury.

Q   No, it exasperated her injury, isn't that what you say in your report?

A   I said it could have. A worst case scenario, it could have magnified it, but the way she sits around and lays in bed conjuring up the worst case scenarios, that's perpetuating her sense of humiliation, that's what she does --

Q   And she takes the --

A   -- so she's cultivating that.

Q   She takes that particular event and makes it worse.

A   She's cultivating a fantasy. She admits its a fantasy. She doesn't know what happened, so she's taking and creating a worry where none existed. She doesn't know what happened, she doesn't know who watched what or for how long. So that does not constitute a traumatic event necessary to make this diagnosis.

Q   In other words, if this event had not happened, she wouldn't do that.

A   She would probably be consciously or unconsciously fantasizing about other things that worry her, such as her husband leaving her and what she's going to do when she's by herself here in Alaska.

Q   Doctor, she con -- we're talking about the event that she's conjuring up now that occurred -- whey we[r here,

isn't that correct?

A   I don't understand your question. I'm sorry.

Q   You said that the event that occurred where she found out that someone looked at her -- a videotape --

A   Mm-hmm (affirmative).

Q   -- of her and her husband having sexual -- sexual contact --

A   Mm-hmm (affirmative).

Q   -- that caused her embarrassment --

A   Mm-hmm (affirmative).

Q   -- humiliation and probably exasperated her prior problems because she came with problems, did she not?

A   Certainly, that's my whole point, yes.

(Transcript of Trial p. 3-48.)

In light of the foregoing testimony, the unanimous testimony of all the witnesses who testified about Ms. Shepherd's damages was that Ms. Shepherd suffered at least some embarrassment and humiliation caused by her learning of Milton Jakeway's illegal viewing of her video-tape. Therefore, it is against not only the clear weight of the evidence, but the unanimous evidence that Ms. Shepherd suffered some compensable loss caused by Milton Jakeway, making it a clear mistake for the jury to answer "no" to the statement "[t]hat Milton Jakeway's conduct in viewing the subject videotape caused Elisha Shepherd to suffer harm" on the special verdict form. (Docket No. 191.)

The jury instructions do not define harm. Instruction number 7 described "damages" as:

> The mental, physical, emotional pain and suffering experienced, and to a reasonable probability to be experienced in the future;

5

The jury had to have either misunderstood or ignored the fact that harm included "embarrassment" and "humiliation." These terms were listed as harm on the Special Verdict Form under number 2. (Docket 191.) Otherwise, they could not have reached the conclusion, based on the undisputed evidence at trial, that Milton Jakeway's conduct in viewing the subject video tape did not cause Elisha Shepherd to suffer harm in the form of embarrassment and/or humiliation.

Based on the foregoing, the jury in the captioned case clearly ignored the undisputed and unanimous evidence regarding the Defendants' causation of the Plaintiff's harm. In light of the foregoing, the Plaintiff requests that the Court grant her motion for a JNOV (renewed motion for judgment as a matter of law) and order a new trial of the Plaintiff's Constitutional claim on damages alone.

II. **THE PLAINTIFF IS ENTITLED TO DAMAGES FOR THE DEFENDANT'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

The Court's use of an advisory jury in the trial of the Plaintiff's Federal Tort Claims Action is of no legal significance since it is the Court's responsibility to decide the case. No reasonable fact finder could conclude that viewing of Ms. Shepherd's video tape did not at least aggravate her pre-existing fragile emotional state and may well have been the complete cause of such mental condition. Ms. Shepherd's emotional distress was therefore the type of severe emotional distress that required many sessions of counseling and continues today. The intent required to be proven in an intentional infliction of emotional distress claim is the same as for any

intentional tort. The Defendant must intend to do the act, not intend the emotional distress as an outcome.

This court chose to have an advisory jury in the Federal Tort Claims Act case. The District Court of Louisiana, in Honeycutt v. U.S., 19 F.R.D. 229 (D.C. Louisiana 1956), ruled that "an advisory jury may not be used in actions against the United States under the Federal Tort Claims Act, Wright and Miller, 9 Federal Practice and Procedure, Civil 2nd § 2335. Notwithstanding, this court in the case at hand did impanel an advisory jury for the Federal Tort Claims Action in this matter. Rule 39(c) permits an advisory jury "in all actions not triable of right by a jury, a court upon motion or of its initiative may try any issue with an advisory jury." (Fed. R. Civ.P. 39(c).) However, the verdict is non binding and has no legal effect. There is no appellate review of errors relating to rulings before the jury or instructions given to the jury acting as an advisory jury. It is the Court's total and complete responsibility to decide the case and to prepare findings of fact and conclusions of law. This court has the ultimate responsibility of weighing the evidence and determining the credibility of witnesses testifying in this case. Wright and Miller, 9 Federal Practice and Procedure, Civil 2nd § 2335; Baicker-McKee Janssen and Corr, Federal Rules Handbook, p.p. 801-02 (2007); Reachi v. Edmond, 277 F.2d 850 (9th Cir. 1960); and Aetna Insurance Co. v. Stanford, 273 F.2d 150 (5th Cir. 1959). Findings of fact and conclusions of law are the responsibility of the court, and the 9th Circuit will not set aside those findings of fact unless they are clearly erroneous,

even when contrary to the advisory jury's verdict. Reachi, Id. As such, Elisha Shepherd requests that this court disregard the advisory jury's finding and rule in her favor on her FTCA claim based on reasons set forth elsewhere in this brief.

Under the Federal Tort Claims Act ("FTCA") the liability of the United States of America is that of Agent Jakeway under the law of the State of Alaska. Agent Jakeway, and therefore the United States of America, is liable to Elisha Shepherd. Under Alaska law Mrs. Shepherd is entitled to damages in tort for intentional infliction of emotional distress. In Alaska, a prima facia case of intentional infliction of emotional distress requires:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability on such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Tommy's Elbow Room, Inc. v. Kavorkian, 727 P.2d 1036, 1043 (Alaska 1986). Conduct is reckless if the defendant's conduct shows a deliberate disregard of a high probability that emotional distress would follow. Id. at 1044.

> In Mitchell v. Rockchester Ry., 151 N.Y. 107, 45 N.E. 354 (1896), the defendant's driver negligently drove a wagon pulled by two horses up to the plaintiff. When the horses stopped, the Plaintiff was standing between them, although they did not come into contact with her. The plaintiff was frightened and later suffered a miscarriage, which medical testimony indicated was caused by the fright. In ordering judgment for the defendant notwithstanding a verdict for the plaintiff, the court ruled that there could be no recovery for fright alone without impact. In the court's view, it followed from that ruling that there could be no recovery for resulting physical manifestations of the fright, such as "nervous disease, blindness or even a miscarriage." This became known as the impact rule and at one time was the clear weight of authority. [Footnote omitted.] **But very few states now adhere to**

8

> the impact rule. (Emphasis added.) Of the recent cases addressing the issue, only Saecho v. Matsakoun, 717 P.2d 165 (Or. App.) rev. granted, 301 Or. 320, 721 P.2d 1388 (1986), continued to adhere to the rule. Rejecting it are Champion v. Gray, 478 So.2d 17 (Fla. 1985), and Ricky v. Chicago Transit Authority, 98 Ill.2d 1 (1983).

J. Henderson, R. Pearson, The Torts Process, Little Brown & Co. (3d Ed. 1988) p. 575.

The Alaska Supreme Court has extended the principle that a physical injury is not necessary in every case in order to recover for emotional distress. Chizmar v. Mackie, 896 P.2d 196, 203-05.

The Alaska Supreme Court held:

> Whether a plaintiff's alleged emotional distress satisfies this standard [that it be severe or serious] presents a question for the jury. While some jurisdictions have required claims of emotional distress to be "medically diagnosable or objectifiable," (footnote omitted) we do not that such a limitation is necessary or desirable.

Chizmar v. Mackie, 896 p.2d at 205). In Chizmar, the Alaska Supreme Court explained that a "plaintiff may recover only for 'severe' or 'serious' emotional distress" and that "[S]erious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." 896 P.2d at 204 (citations omitted). The term serious emotional distress as the Supreme Court of the State of Alaska equates serious and severe as being synonymous for the purposes of intentional infliction of emotional distress analysis. Chizmar v. Mackie, 896 P.2d 196 (Alaska 1995); Fyffe v. Wright, 93 P.3d 444 (Alaska 2004). The word serious is a relative term. What is serious to one victim of a tort may be a mild discomfort or

nothing at all to another. The common law has recognized that for centuries. The law still recognizes that to be so today.

> Intending an offensive contact, A lightly kicks B on the shin. The blow, although offensive, is so slight that it would normally cause no bodily harm. B is suffering from diseased leg, of which A neither knows nor has reason to know. The slight blow so aggravates the diseased condition as to result in prolonged and extensive illness which finally leads to a permanent harm to the leg. A is subject to liability to B for the bodily harm caused by his act. <u>Restatement of the Law Torts 2nd</u>, § 16 illustration no. 1 page 28.

This kind of damage is referred to as the "eggshell skull rule" or the more scholarly statement that the "tort-feasor takes his victim as him finds him." Both Dr. Smith and Dr. Sandberg clinical psychologists, are of the opinion, and that Mrs. Shepherd was suffering from post traumatic stress disorder as a result of the incident which brought about this lawsuit.

The Defendants' expert Dr. Sperbeck, in his report and in his testimony, is of the opinion that Mrs. Shepherd has a fragile personality. She is prone to suffer psychological injury and that this incident may well have magnified her problems. He testified that this incident certainly caused her humiliation, embarrassment and anxiety. All the psychologists are of the opinion that Mrs. Shepherd needs further, and maybe even long term, psychological treatment. Based on the expert opinions in this matter, it defies both logic and experience to find that learning that Agent Jakeway watched her intimate and personal video tape did not cause <u>serious</u> emotional distress to Elisha Shepherd. Even if the only opinion accepted is that of the Defendants' expert, Mrs. Shepherd is a classic example of the law's eggshell skull doctrine.

The court should also note that the evidence shows that the military thought that the incident caused serious enough emotional problems for Mrs. Shepherd that she was referred to Standing Together Against Rape (S.T.A.R.) for counseling. There is no evidence to support a finding that this incident did not cause Mrs. Shepherd serious emotional distress.

Intentional tort liability does not require that the tort-feasor intend to cause harm. The intent for the purpose of the tort of the intentional infliction of emotional distress is to intend to do the act which, as in this case, results in some injury or harm. It's the intent to do the act. It is not necessarily that the tort-feasor intends to harm anyone. Dobbs, The Law of Torts §§ 46 and 47; Champs, Evaluating Independent Torts Based Upon "Intentional" or "Negligent" infliction of emotional distress: How we can keep baby from dissolving in the bath water? 42 DEF. L.J. 583, Footnote 6 at 586; Restatement 2nd of Torts § 8 comments a and b and, § 16(1), comment a. Intention required in intentional torts is very sophisticated thinking. Restatement 2nd of Torts §§163 and 164 and the comments. Professor Crump notes:

> Intentional tort liability does not necessarily require intentional injury; the intent to commit the act may be sufficient.

Crump, Supra.

Dobbs, in discussing torts arising out of 4th amendment violation, states:

> *Transferred intent or extended liability.* It also seems that the extended liability or transferred intent rules applied in common law trespassory torts has at least some scope in the Fourth Amendment § 1983 tort. Thus the Court has said that even if the officer detains a person who is

11

not the intended one, a seizure occurs. Similarly, an intended seizure includes unintended consequences.

Dobbs, Supra. § 89 and 90.

Agent Jakeway intended to look at the tape and in fact did so without legal justification or right. He searched and seized the tape in violation of Mrs. Shepherd's rights to be safe and secure in her person, home and effects. He is a trespasser and he intended to trespass. No court can accept the argument that Agent Jakeway was not sufficiently trained to know that the search and seizure was unlawful and a violation of Mrs. Shepherd's 4th Amendment rights and her privacy. When the United States made him a law enforcement officer he was supposed to know. No reasonable officer would believe that his conduct was not a violation of the law. This Court has already determined this when it denied his assertion of qualified immunity. It is therefore clearly an intentional act.

Agent Jakeway stated in his report that he watched the tape which contained Mrs. Shepherd and her husband having intercourse. He knew full well, as a trained Army Criminal Investigations Agent, that Charles Shepherd would be given that information. In fact, Agent Jakeway knew that Charles Shepherd must be given the report as Charles Shepherd was subject to military punishment. This created a substantial and unjustifiable risk that Mrs. Shepherd would receive that information and become harmed by the disclosure. It is respectfully submitted it is a certainty that Mrs. Shepherd would learn of this intentional conduct and be harmed. Therefore, the conduct of Agent Jakeway amounts to either

intentional or reckless infliction of serious or severe emotional distress which caused harm to Elisha Shepherd.

Under Alaska law Mrs. Shepherd is entitled to damages in tort for the Defendants' intentional infliction of emotional distress based on Agent Jakeway's invasion of her privacy. The State of Alaska recognizes the tort of the invasion of privacy, including intrusion upon seclusion. The State of Alaska in its constitution guarantees the right of privacy. (Constitution of Alaska Art. I § 22.) Of course that only prohibits the government from invading privacy. The State of Alaska has, however, also recognized the common law right of privacy. Alaska subjects any person who invades another's privacy, solitude, seclusion, or meddles with another's private affairs or concerns to tort liability. The Alaska Supreme Court has adopted the <u>Restatement 2nd of Torts</u> §§ 652a and 652b. Agent Jakeway, without a doubt, intruded into the private affairs and concerns of Mrs. Shepherd when he intentionally viewed the tape containing her most private and personal conduct with her husband. Mrs. Shepherd had more than a reasonable expectation of privacy regarding the contents of that tape.

This court has previously found that Defendant Officer Jakeway violated Mrs. Shepherd's 4th Amendment rights by viewing this tape. (Docket No. 170.) Whether or not the tape was labeled is immaterial. Defendant Officer Jakeway's intent to look at a tape found in Mrs. Shepherd's private residence, and private bedroom, without permission and without lawful and legal authority, then describing in his report (knowing that Ms. Shepherd was likely to read the report) his watching the tape

without describing how much or little of the tape he watched, was extreme and outrageous conduct that entitles Mrs. Shepherd to damages in Alaska for the intentional infliction of emotional distress. Agent Jakeway's conduct in violating Mrs. Shepherd's constitutional rights under the 4th amendment, and invading her most private relations with her husband without consent or legal justification, is nothing less than extreme and outrageous conduct. This Court has already reasoned that "[t]here is no reason, absent pure curiosity or, in the event it was labeled, lascivious motives, for the officers to view the videotape at the scene rather than seizing it and securing a warrant." (Docket No. 39, p. 13.)

Three clinical psychologists have either tested or treated Mrs. Shepherd subsequent to her becoming aware of the Defendant Jakeway's illegal and outrageous conduct in viewing a tape of her martial relations with her husband. Dr. Sandberg, Ph.D. evaluated Ms. Shepherd as her treating clinical psychologist. Dr. Smith, Ph.D. also evaluated Mrs. Shepherd. Dr. Sperbeck, Ph.D, evaluated Mrs. Shepherd as an expert witness for the Defendants. Two of these clinical psychologists, Dr. Smith in his report which was reviewed by Dr. Sperbeck, and concurred with by Dr. Sandberg, opined that Mrs. Shepherd had symptoms of depression and anxiety. They opined that she suffered from post traumatic stress disorder. They attributed this disorder to Mrs. Shepherd becoming aware of the viewing of this intimate video tape. They further stated that she has been unable to overcome that experience. The Defendants' expert, Dr. Sperbeck, while disagreeing with Dr. Smith's and Dr. Sandberg's

conclusions, nevertheless stated in his report and testimony that Ms. Shepherd learning of the viewing of this marital relations videotape offended and embarrassed her. He reported "it is conceivable that these circumstances magnified her pre-existing social anxieties and fears of criticism/rejection." Dr. Sperbeck upon cross examination stated this event caused embarrassment, humiliation and magnified her present emotional problems. Not a single witness produced by the United States in defense stated that this "event" did not cause aggravation of a pre-existing social anxiety and fears of criticism and rejection. After considering all of the evidence, it is only fair to concluded that Elisha Shepherd's discovery that Agent Jakeway watched her intimate video tape caused a serious emotional disturbance.

Alaska has a case that discusses this issue. In <u>Grant v. Stoyer</u>, 10 P.3d 594 (Alaska 2000), (an automobile collision negligence case), negligence was clearly established. The trial focused only on the issues of causation and damages. The Plaintiff's treating doctors testified that the Plaintiff had injured her shoulder. The Plaintiff had recurring complaints of pain in her shoulder. The defense experts (much as Dr. Sperbeck opined in the case) stated that the Plaintiff could have not have suffered that particular type of shoulder injury in the automobile accident. The jury returned a verdict finding that the accident was not the cause of the Plaintiff shoulder injury. The Alaska Supreme Court, in an opinion authored by Justice Eastaugh ruled:

> no reasonable juror could have concluded that the accident
> did not at least aggravate that preexisting condition . . .
> . an aggravation of a previous condition still constituted
> an injury.

Id. at 597.

The court also noted in Grant that the evidence that the accident did not cause at least some injury is clearly unconvincing. A verdict of no damages, therefore, was unreasonable and unjust. The court, quoting one of its prior decisions, stated:

> The clear weight of authority holds that a jury award which
> fails to include a sum for these items of general damage is
> inadequate or inconsistent when the evidence supporting
> them is beyond legitimate controversy. (Citation
> admitted.)

Id. at 597.

Where some injury has been proved, Alaska law requires that appropriate damages should, and must, be awarded -- a fact finder cannot freely ignore the evidence of some obvious injury.

In Fyffe v. Wright, 93 P.3d 444 (Alaska 2004) (intentional infliction of emotional distress of residential tenant), the Plaintiff's only evidence of the severity of her distress was the testimony of her immediate family members. Justice Carpeneti, for the Alaska Supreme Court, wrote that the trial court was within its discretion to award nothing on the Plaintiff's emotional distress claim. The case at hand, however, is the opposite of Fyffe. Both the treating psychologist Dr. Sandberg, and evaluating psychologist Dr. Smith, found the Plaintiff's emotional distress to be directly attributable to the conduct of Agent Jakeway. Even the Defendants' expert, who is certainly not to be considered a

sympathetic witness, testified that Agent Jakeway's conduct caused some damage, whose report stated:

> It is conceivable that these circumstances magnified her pre-existing social anxiety and fears of criticism/rejection.

The evidence in this case establishes that Mrs. Shepherd's emotional distress was caused by or was the result of Agent Jakeway's conduct and Mrs. Shepherd's becoming informed of that conduct. All the evidence listed in this case by the three clinical psychologists established that Mrs. Shepherd's emotional distress was caused by this incident.

### Conclusion

Elisha Shepherd requests that the Court grant her motion for a new trial based on the undisputed evidence that she suffered harm in the form of embarrassment and humiliation caused by learning that Milton Jakeway viewed her video tape depicting her engaged in sexual relations with her husband.

Elisha Shepherd also request that the Court enter final judgment in her favor in her FTCA claim for intentional infliction of emotional distress.

DATED this 22ND day of January 2007 at Anchorage, Alaska.

The Law Offices of Yale H. Metzger
Attorney for the Plaintiff

_____
Yale H. Metzger
101 E. 9th Ave., Suite 7
Anchorage, AK 99501
Phone: (907) 258-4110
Fax: (907) 277-1894
Email: yhmetzger@apl.com
Alaska Bar No. 9512082

DeVeaux & Associates
Attorney for the Plaintiff

_____
LeRoy E. (Gene) DeVeaux
701 West 41st Avenue, Suite 201
Anchorage, Alaska 99503
Telephone (907) 565-2906
Alaska Bar No. 7310040

A true and correct copy of the
foregoing was served electronically
to the following this 22ND day of
January 2007:

Susan Lindquist, Esq.
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West 7th Avenue, No. 9, Room 253
Anchorage, Alaska 99513-7567

_____
Yale H. Metzger