NELSON P. COHEN
United States Attorney

SUSAN J. LINDQUIST
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: susan.lindquist@usdoj.gov

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ELISHA SHEPHERD,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>MILTON J. JAKEWAY and the<br>UNITED STATES OF AMERICA,<br><br>　　　　　　Defendants. | Case No. 3:01-cv-00333-JKS<br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO SHEPHERD'S MOTION FOR JNOV, A NEW TRIAL AND A FINDING OF IIED AT DKT 200** |

**I.   THE JURY VERDICT WAS CONSISTENT WITH THE EVIDENCE AND NO JNOV SHOULD BE GRANTED**

"A JNOV is proper when the evidence permits only one reasonable

conclusion as to the verdict. *Id. . . .* A JNOV is improper if reasonable minds

could differ over the verdict. *See, e.g., Yeamen v. United States, 584 F.2d 322,*

326 (9th Cir.1978)." *Peterson v. Kennedy, 771 F.2d 1244, 1252 (9th Cir. 1985).*

"If there is substantial evidence presented at trial to create an issue for the jury, a trial court may not grant a motion for a directed verdict or for judgment notwithstanding the verdict. *Landes Const. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir. 1987).*

Shepherd argues that she is entitled to a JNOV on the <u>Bivens</u>' damage award because there was undisputed evidence of causation and there was undisputed evidence that Jakeway's conduct caused Shepherd embarrassment and humiliation. Dkt. 200 at 3. But Shepherd fails to recognize that a jury "is entitled to reject the testimony in its entirety, disbelieving both the reasonable and the unreasonable aspects. This, too, is an exercise in comparing testimony with known truth (gravity) and rejecting it for inconsistency with that known truth." *Grotmeyer v. Hackman, 393 F.3d 871, 879 (9th Cir. 2004).* Courts typically instruct juries that "they 'may believe everything a witness says, or part of it, or none if it,' and a judge has the same choices, for the same reasons." *Sea Hawk Seafoods, Inc. v. Alyeska Pipeline Service Co. 260 F.3d 900, 913 (9th Cir. 2000).* In this case, Judge Singleton instructed the jury in regards to expert opinion testimony that it

could "accept it, reject it, or give it as much weight as you think it deserves." *Final Instruction No. 18.*

Moreover, Shepherd failed to recognize that causation was disputed. The cause of her mental disturbance was strongly disputed. There were several possible sources for her mental distress, including her dislike of Alaska, her husband's attempted suicide, her own childhood. The government disputed that Shepherd was harmed by the viewing in light of the real and specific trauma she experienced the morning her husband attempted suicide. The jury did not believe Shepherd. Shepherd had avoided any truth about the incident and had imagined the worse case scenario about the video viewing. She could have just as easily imagined the cause of her psychological distress. Perhaps the jury believed that the videotape was the scapegoat for all of Shepherd's woes. Shepherd stating that she was embarrassed and humiliated does not make it so, unless the jury believes her. The jury rejected any witness statement that the viewing of the videotape caused Shepherd harm that warranted compensatory damage.

Shepherd certainly was not credible. For example, she changed her testimony about what happened on November 18 when she made two written statements about events that cannot both be true. *Cf Trial Ex. D-1 (sworn typed statement)*

*and Trial Ex. D-2 (later hand written statement).* The jury had reason to disbelieve her statement that it was the videotape viewing that caused her emotional distress.

The evidence permits a finding that Shepherd was harmed by "the worst night of her life." When she found out that the videotape was viewed, the jury could have concluded that no additional harm was done. Rather Shepherd, herself, created her own damages by fanasizing about the viewing of the videotape. *Ex. A at 3-54.* There was substantial evidence presented about Shepherd's emotional reaction to the misinformation that her husband had died, and having been the victim of her husband's violence caused all her psychological harm. Shepherd is mistaken when she concludes that causation was not disputed.

## II. SHEPHERD FAILED TO PRESENT EVIDENCE TO JUSTIFY A NEW TRIAL

Shepherd requests a new trial. Dkt 200 at 1. Fed. R. Civ. P. 59(a) allows for a new trial for "any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . ." Shepherd does not cite to any actions at law which state the basis for a new trial under the circumstances of this case. She only argues that the jury was clearly erroneous in

finding that the Constitutional violation did not cause Shepherd harm.  Dkt 200 at 3.  She argues that "the unanimous testimony of all witnesses who testified about Ms. Shepherd's damages was that Ms. Shepherd suffered at least some embarrassment and humiliation caused by learning of Milton Jakeway's illegal viewing of her video-tape."  Dkt. 200 at 5.  But, as stated above, the jury can disregard testimony as to causation which can not be empirically proved..

"A district court may order a new trial based on insufficient evidence only if it finds that the jury's verdict 'is against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result.'"  *Ace v. Aetna Life Insurance, Co.  139 F.3d 1241, 1247 (9th Cir. 1998)* (citation omitted).  Shepherd is claiming that the decision of the jury goes against the weight of the evidence.

The weight of the evidence proved that the real emotional harm occurred on November 18th when Shepherd had to endure her husband's verbal and physical abuse.  The altercation between Elisha and Charlie was extremely violent.  The evidence showed that Shepherd was seriously affected by her husband's actions and the misinformation that her husband had died.  By awarding only nominal damages, the jury implicitly found that the videotape viewing did not contribute to

Shepherd's emotional state. In fact, it was significant that Charlie blamed Elisha for the videotape viewing. *Ex. A. at 3-29.* The way Shepherd learned of the bad news was distressing and could have magnified the nature of the bad news, and caused distress. *Ex. A at 3-30.*

As stated above, the jury is free to disbelieve testimony. The damage claim is for emotional distress, which is not readily provable, like a dent in a car bumper or a broken arm. Emotional distress can be fabricated or be created by indivisible sources. The jury's verdict that Shepherd was not harmed by Jakeway's viewing of the videotape does not go against the great weight of the evidence, because Shepherd was unbelievable and Charlie provided ample reason for Shepherd's distress.

### III. JAKEWAY DID NOT INTENTIONALLY INFLICT EMOTIONAL DISTRESS BECAUSE THE TAPE WAS NOT LABELED AND HE WAS FOLLOWING AN ORDER

"The elements of the tort of IIED require that the defendant intentionally or recklessly engage in extreme or outrageous behavior causing severe emotional distress or bodily harm to the plaintiff. Before submitting an IIED claim to the jury, the trial judge must determine "whether the severity of the emotional distress

and the conduct of the offending party warrant a claim of [IIED]." *Jones v. State of Alaska, Dept. Of Corrections, 125 P.3d 343, 346 (Alaska 2005).*

In *Finch v. Great land Foods, Inc., 21 P.3d 1282 (Alaska 2001)* the court relied on *Restatement (Second) of Torts § 46(1)* and wrote:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

An indignity is defined as "humiliating, degrading, or abusive treatment," and as "an injury to a person's dignity; slighting or contemptuous treatment; humiliating affront, insult, or injury."[1]

Two key pieces of evidence establish that there was no outrageous behavior. First, the jury decided that the tape was not labeled, and thus, Jakeway could not have known what was on the tape. The jury chose to reject Shepherd's and Michelle Shepherd's testimony that the label was on the videotape before or on the

---

[1] Dictionary. com

Shepherd v. Jakeway
Case No. 3:01-cv-00333-JKS            7

night of November 18th, and to accept the testimony of Birt, *Ex. B at 60, 70, 85-6*, Wisel, *Ex. C at 36*, and Jakeway, *Ex. D. at 33, 45, 48,* that the videotape was black and unlabelled.  It was not against the weight of the evidence for the jury to decide that there was no label on the tape.  Moreover, Wisel testified that there was other material on the videotape, such as cartoons and pay-per-view advertisements on the tape, so even if there had been a label, it was not entirely correct.  *Ex. C at 28*.  Jakeway could have just as easily viewed those non-sexual segments for his few seconds of viewing.  Jakeway had no idea what was on the unlabeled tape.  *Ex. C at 48*.  The weight of the evidence is that the tape was unlabelled.

    Second, Jakeway asked Birt, his supervisor, for instruction about what to do with the tape, and she told him to "check it out."  *Ex. B at 57*.  Birt was the agent in charge directing the events.  *Ex. B at 83*.  At the time, Birt did not know if Charlie's attempted suicide was spur of the moment or planned out.  *Ex. B at 84*.  Birt had seen suicide notes left on videotapes before.  <u>Id</u>.  Jakeway thought the videotape could contain a suicide note.  *Ex. D at 48*.  Both Birt and Jakeway considered the possibility that the videotape contained a suicide note.  Jakeway looked to Birt, the agent in charge, for instructions and he followed what appears to be a reasonable order from a superior officer.  There is nothing extreme or

outrageous when one acts after getting an order or request from a supervisor.

Shepherd argues that the only intent required for an IIED claim is the intent to do the act. *Dkt. 200 at 11.* Jakeway's intent was to watch an unlabeled videotape to see if it contained a suicide note. *The Restatement (Torts) Second* noted that it "has not been enough that the defendant has acted with an intent which is tortuous or even criminal. . . ." *§ 46 Comment d.* It also stated that the rule applies when "the actor intends to inflict emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct.

Thus, it is not the intent to the act that results in liability, it is the intent to inflict emotional harm. There is no evidence that Jakeway intended to commit a tortuous or criminal act, let alone intended to inflict emotion stress on a person he had not even met. As found by the jury and substantiated by the testimony of Jakeway, Wisel and Birt, the videotape was unlabeled. Moreover, Birt ordered Jakeway to "check it out." Jakeway's intent was to check out the videotape and not to harm the owners of the tape.

Ms. Shepherd argues that Jakeway was a trained officer and he knew that "Charles Shepherd must be given" the report. Dkt. 200 at 12. Ms. Shepherd does not cite to any evidence which substantiates this claim. Moreover, even if this

allegation had been substantiated, there is no evidence that Jakeway would know that Charlie would share the information with Elisha. This argument is pure speculation.

Shepherd argues that whether the tape was labeled or not is immaterial. Dkt. 200 at 18. The court previously stated that "[t]here is no reason, absent pure curiosity or, in the event that it was labeled lascivious motives, for the officers to view the videotape at the scene rather than seizing it and issuing a warrant." Dkt. 39 at 13. But there is a reason, absent pure curiosity, to view a tape at the crime site of an attempted suicide. Birt attested to her actual experience on cases in which a videotape contained a suicide note. Jakeway attested that he knew that sometimes people leave suicide notes on videotapes. Moreover, Birt testified that when she told Jakeway to check out the videotape, it was an order.

Shepherd argues that three psychologists testified that Shepherd suffered from post traumatic stress disorder ("PTSD") that arose from hearing that the videotape had been watched. Dkt. 200 at 14. She is mistaken.

Dr. Sperbeck read from the learned treatise, the DSM IV about the causes of PTSD. He testified that Shepherd had PTSD from "the numbing fear and sheer anxiety she experienced when she believed that her husband had committed

suicide . . ." *Ex. A at 3-20.* He testified that the only possible thing that could have caused her PTSD was her belief that her husband had committed suicide. *Ex. A at 3-38.* Shepherd argues that all psychotherapists agree that she needs long term care. But the need is not based on the videotape viewing. Dr. Sperbeck testified that the video tape viewing did not cause Shepherd's injury. *Ex. A at 3-39.* Shepherd is cultivating a fantasy. *Ex. A at 3-47.* Shepherd argues that it defies logic not to conclude that she suffered serious emotional distress. *Dkt 200 at 10.* But it defies logic not to conclude that all of her emotional distress stems from "the worst night of her life." *Ex. A. at 3-51.*

The Fed. R. Evid. 702 allows expert testimony that is based upon sufficient acts or data, is the product of reliable principles and methods and those methods have been properly applied. The jury could have concluded that none of the thee psychologists had sufficient data, as Ms. Shepherd was the source for all of the factual data, to make a conclusion about the role the videotape viewing played in Shepherd's emotional distress. Moreover, the jury may rely on its own life experiences to determine whether Shepherd's reaction to the knowledge about the videotape being seen is reasonable, reliable and merits compensation.

Dr. Sperbeck testified that it is embarrassing and humiliating to know that someone watched a videotape, but it does not create a psychiatric disorder. *Ex. A at 3-50.* In fact, embarrassment is ubiquitous to the human experience. *Ex. A at 3-21.* The jury could have believed that Shepherd was not sufficiently embarrassed to warrant compensation or that her embarrassment was caused by the manner in which Charlie delivered the information.

Dr. Sperbeck also impeached the testimony of the other two psychologists, who rendered faulty opinions based on inaccurate information. Dr. Smith ignored the fact that his own computer registered that the data was faulty. *Ex. A at 3-56.* Moreover, he was unaware of the degree of trauma Shepherd had experienced with her husband and he failed to mention it. *Id.* As to Dr. Sandberg, Dr. Sperbeck stated that he never formed a diagnosis. *Id.* Moreover by the time Dr. Sandberg was deposed, he had read Dr. Sperbeck's report. *Ex. A at 3-57.*

Shepherd argues that she is an eggshell plaintiff, therefore she must have experienced <u>serious</u> emotional distress upon learning that Jakeway had watched her videotape. *Dkt 200 at 10. The Restatement(Torts) 2d* emphasizes that "major outrage is essential to the tort." § 46 *Comment f.* Even if the actor knows the fragile nature of the victim, there is no tort unless the conduct is outrageous. *Id.*

The conduct was not outrageous because the tape was unlabelled. The conduct was not reckless because Jakeway consulted with a superior officer before watching the tape. Shepherd did not prove the elements of the tort of intentional infliction of emotional distress.

## IV. SHEPHERD'S INVASION OF PRIVACY CLAIM WAS DISMISSED.

Shepherd argues that Shepherd is entitled to damages based on Jakeway's violation of her privacy. Dkt. 200 at 13. This claim was dismissed. Dkt. 39 at 17-18.

## CONCLUSION

Shepherd presented no evidence to justify a JNOV as to damages. A JNOV is improper because reasonable minds could differ over the cause of Shepherd's emotional harm. The jury was free to disregard Shepherd's opinion about the cause of her distress as there were ample alternative reasons for her stress. The psychologists could only base their opinions on her input, both in taking tests and talking about her life. The jury simply concluded that the viewing of the videotape did not harm her, such that she should be compensated.

The jury verdict was not against the great weight of the evidence. The evidence proved that the events of November 18 caused Shepherd's harm.

There is no evidence that Jakeway intentionally inflicted emotional distress on Shepherd. The tape was not labeled and Jakeway and Birt both thought the tape may contain a suicide note. Jakeway followed his supervisor's order when he viewed the tape. As he did not know what was on the tape, he did not intend to harm Shepherd by watching a few seconds of bodies engaged in sexual relations. Jakeway did not do an outrageous or reckless act.

The jury verdict is supported by the evidence. The govern ment asks the court to independently rule that Shepherd failed to prove that Jakeway intended to inflict emotional distress.

Respectfully submitted March 5, 2007, in Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/ Susan J. Lindquist
Assistant U. S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-3378
Fax: (907) 271-2344
E-mail: susan.lindquist@usdoj.gov
AK #9008053

**CERTIFICATE OF SERVICE**

I hereby certify that on  March 5, 2007
a copy of the foregoing DEFENDANTS RESPONSE IN OPPOSITION
TO SHEPHERD'S MOTION FOR JNOV, A NEW TRIAL
AND  AND A FINDING OF IIED AT DKT 200 was served
electronically on Yale H. Metzger,
and by U. S. Mail on:

LeRoy E.DeVeaux.
701 W. 41st Ave., Suite 201
Anchorage, AK 99503-6604


s/ Susan J. Lindquist